UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| PARADIGM BIODEVICES, INC.<br><br>Plaintiff,<br><br>V.<br><br>VISCOGLIOSI BROTHERS, LLC,<br>VISCOGLIOSI & COMPANY, LLC,<br>PARADIGM SPINE, LLC, CENTINEL<br>SPINE, INC., JOHN J. VISCOGLIOSI,<br>and ANTHONY G. VISCOGLIOSI,<br><br>Defendants. | _____ cv _____ ( __ )<br><br>**COMPLAINT AND JURY DEMAND** |

**Nature of Action**

This is a successor liability action for the recovery of damages in the amount of $14,843,542.20, arising out of the wrongful conduct of the Defendants' predecessor-in-interest as well as the Defendants' tortious conduct in interfering with the Plaintiff's contractual relationship with that predecessor-in-interest. The Plaintiff already has obtained a judgment in the amount of $15,189,785.67 against the predecessor-in-interest in an action brought in the High Court of Justice Chancery Division in the United Kingdom, which judgment has been domesticated in a Massachusetts state court in the amount of $14,843,542.20.

**The Parties**

1.  Plaintiff Paradigm BioDevices, Inc. ("Paradigm BioDevices") is a duly-organized Massachusetts corporation with a principal place of business in Rockland, Massachusetts.

2.  Defendant Viscogliosi Brothers, LLC ("Viscogliosi Bros.") is a New York limited liability company that has a principal place of business at 505 Park Avenue, 14th Floor, New York, New York. The principals and members of Viscogliosi Bros. are brothers John

J. Viscogliosi, Anthony G. Viscogliosi, and Marc R. Viscogliosi, all of whom founded Viscogliosi Bros. in 1999.

3. Viscogliosi & Company, LLC ("Viscogliosi & Co.") is a Delaware limited liability company that has a principal place of business at 505 Park Avenue, 14th Floor, New York, New York. Viscogliosi & Co. is an investment bank founded by, and a wholly-owned subsidiary of, Viscogliosi Bros.

4. Defendant Paradigm Spine, LLC ("Paradigm Spine") is a Delaware limited liability company that Viscogliosi Brothers founded in 2004 and which has a principal place of business at 505 Park Avenue, 14th Floor, New York, New York. Before changing its name in 2005 to Paradigm Spine, it was formerly known as Spine Motion, LLC.

5. Defendant Centinel Spine, Inc. ("Centinel") is a Delaware corporation that has a principal place of business at 505 Park Avenue, 14th Floor, New York, New York.

6. Defendant John J. Viscogliosi ("John Viscogliosi") is an individual who resides at 310 East 53rd Street, New York, New York. In addition to being a member and principal of Viscogliosi Bros., John Viscogliosi is the Chairman and Chief Executive Officer of Centinel.

7. Defendant Anthony G. Viscogliosi ("Anthony Viscogliosi") is an individual who resides at 151 East 80th Street PH, New York, New York. In addition to being a member and principal of Viscogliosi Bros., Anthony Viscogliosi is a Director of Paradigm Spine.

8. Viscogliosi Bros., Viscogliosi & Co., Paradigm Spine, and Centinel share a principal place of business and are all owned and/or controlled by John Viscogliosi, Anthony Viscogliosi, and/or Marc R. Viscogliosi. Herein, Viscogliosi Bros., Viscogliosi & Co., Paradigm Spine, Centinel, John Viscogliosi, and Anthony Viscogliosi are collectively referred to as the "Defendants."

## Jurisdiction and Venue

9. Pursuant to 28 U.S.C. § 1332, this Court has diversity jurisdiction over this matter because the matter in controversy exceeds $75,000, exclusive of interest and costs, and is between citizens of different states.

10. Pursuant to 28 U.S.C. § 1391(a), venue is proper in this Court because all of the Defendants either reside or have a principal place of business in this judicial district.

## Underlying Facts

### Distribution Agreement and Change of Control Payment

11. At all times relevant hereto, Paradigm BioDevices is a medical device manufacturer and distributor specializing in advanced spinal medicine and science.

12. On or about October 27 2004, Paradigm BioDevices and Surgicraft Limited ("Surgicraft"), a medical device manufacturer based in the United Kingdom, entered into an exclusive distribution agreement, which was amended and restated by further written contract dated March 7, 2005 and which Surgicraft executed on March 10, 2005 (the "Distribution Agreement"). A true and accurate copy of the Distribution Agreement is appended hereto as Exhibit 1.

13. Pursuant to the Distribution Agreement, Paradigm BioDevices sold Surgicraft products to hospitals and medical professionals throughout the United States. One of Surgicraft's devices that Paradigm BioDevices was especially successful in marketing was a mechanical spinal fixation system known as "STALIF TT," which is commonly referred to as "STALIF."

14. Because Surgicraft expressed a desire to find a buyer for its company as soon as possible, Paradigm BioDevices and Surgicraft agreed, *inter alia*, that Paradigm BioDevices would be

3

entitled to a payment in the event that Surgicraft was acquired by a company that then terminated the Distribution Agreement (the "Change of Control Payment").

15. At the time it entered into the Distribution Agreement, Surgicraft understood and intended that it would be obligated to make the Change of Control Payment to Paradigm BioDevices in the event that Surgicraft was acquired by a company that then terminated the Distribution Agreement.

## The Trademark Litigation

16. Viscogliosi Bros. is a private equity and merchant banking firm focused on the medical device field and, more particularly, musculoskeletal and orthopedic technology.

17. In 2004, Viscogliosi Bros. formed a portfolio company called Spine Motion, LLC, which was renamed Paradigm Spine in 2005.

18. On January 24, 2007, Paradigm BioDevices filed an action in U.S. District Court for the District of Massachusetts (*Paradigm BioDevices, Inc. v. Paradigm Spine, LLC*, C.A. No. 1:07-cv-10127-DPW) against Paradigm Spine, asserting claims for trademark infringement, false designation of origin, and unfair competition (the "Trademark Action").

19. In the Fall of 2007, during the discovery phase of Paradigm BioDevices' Trademark Action, Paradigm Spine demanded proof of Paradigm BioDevices' damages. In response, Paradigm BioDevices produced to Paradigm Spine its financials and balance sheets, marked "Confidential," which included information about Paradigm BioDevices' sources of revenue and the lucrative Distribution Agreement between Paradigm BioDevices and Surgicraft.

20. After receiving the confidential information from Paradigm BioDevices during discovery in the Trademark Action, Paradigm Spine shared it with the other Defendants.

21. In January 2008, Paradigm Spine settled with Paradigm BioDevices in the Trademark Action and subsequently delivered a settlement check to Paradigm BioDevices.

22. On January 16, 2008, Paradigm BioDevices and Paradigm Spine filed a Stipulation of Dismissal in the Trademark Action, and the case was closed that day.

### The Defendants Induce Surgicraft to Breach the Distribution Agreement and Purchase Surgicraft Through Centinel

23. Upon information and belief, the Defendants became interested in acquiring Surgicraft after learning, through discovery in the Trademark Action, of the considerable profits Paradigm BioDevices realized through distribution of Surgicraft products.

24. Upon information and belief, in or about February 2008, the Defendants, using the confidential information obtained from Paradigm BioDevices through discovery in the Trademark Action, decided to form a new company that would offer to buy the entire issued share of Surgicraft and, at the same time, acquire the entire issued share of Raymedica, LLC ("Raymedica"), a Delaware limited liability company that Viscogliosi Bros. had earlier founded.

25. On or about February 27, 2008, John Viscogliosi met with Surgicraft's owner to discuss the Defendants' plan to acquire Surgicraft.

26. The Defendants understood from John Viscogliosi's discussions with Surgicraft that Paradigm BioDevices would be entitled to the Change of Control Payment upon an acquisition of Surgicraft and subsequent termination of the Distribution Agreement. John Viscogliosi discussed with Surgicraft's owner how Paradigm BioDevices would be compensated. See February 27, 2008 memorandum from Surgicraft's legal counsel to John Viscogliosi, a true and accurate copy of which is appended hereto as Exhibit 2, at ¶ 3.

27. Notwithstanding Paradigm BioDevices' and Surgicraft's ongoing and successful business relationship, Surgicraft did not inform Paradigm BioDevices that the Defendants had expressed an interest in acquiring Surgicraft.

28. It was only through the apparent inadvertence of Surgicraft's counsel that Paradigm BioDevices learned of the Defendants' planned acquisition of Surgicraft. In March 2008, while Paradigm BioDevices and Surgicraft were negotiating terms for a new distribution agreement, Surgicraft's counsel provided Paradigm BioDevices with a draft agreement that contained a mark identifying the document file name, in part, as "Acquisition by Viscogliosi."

29. On March 27, 2008, after Paradigm BioDevices confronted Surgicraft about the Defendants' involvement, Surgicraft denied that a deal was imminent, but reiterated its intent that Paradigm BioDevices would receive the Change of Control Payment should any acquisition occur. See March 27, 2008 e-mail from Surgicraft's Chairman and Chief Executive Officer, Andrew Hull, to Paradigm BioDevices, a true and accurate copy of which is appended hereto as Exhibit 3.

30. Paradigm BioDevices and Surgicraft continued to negotiate the terms of a new agreement, but it was understood at all times during those negotiations that the Distribution Agreement provided for a payment to Paradigm BioDevices in the event of a change of control of Surgicraft.

31. However, by late Spring/early Summer of 2008, Surgicraft denied that the Change of Control Payment agreed to in 2004 under the Distribution Agreement would be due to Paradigm BioDevices, despite Surgicraft's previously-expressed intent to abide by that agreement.

32. On or about August 1, 2008, John Viscogliosi and Marc Viscogliosi, on behalf of the Defendants, met in Boston, Massachusetts with Paradigm BioDevices' President and Vice

6

President of Sales. At that time, John Viscogliosi and Marc Viscogliosi made it known to Paradigm BioDevices' representatives that they were aware Paradigm BioDevices expected to be paid, pursuant to the Change of Control Payment provision in the Distribution Agreement, if an entity connected to the Defendants acquired Surgicraft and terminated the Distribution Agreement.

33. At that August 1, 2008 meeting, John Viscogliosi and Marc Viscogliosi confirmed that they were buying Surgicraft and discussed with Paradigm BioDevices' representatives the amount that Paradigm BioDevices would be owed pursuant to the Change of Control Payment provision of the Distribution Agreement upon an acquisition.

34. On or about August 15, 2008, the Defendants acquired all shares of Surgicraft through Centinel, which Viscogliosi Bros., John Viscogliosi, and Anthony Viscogliosi had created. As a result of that acquisition, Surgicraft became a wholly-owned subsidiary of Centinel.

35. Also on August 15, 2008, Centinel, Surgicraft, and a company called Mandaco 569 Limited ("Mandaco") entered into a three-party manufacturing agreement (the "Manufacturing Agreement"), through which Centinel appointed Mandaco, on its behalf, as the sole and exclusive manufacturer of the products then being manufactured, marketed, and/or sold or proposed to be developed, designed, manufactured, marketed, and/or sold by Surgicraft, including the STALIF TT products that Paradigm BioDevices had been distributing for Surgicraft pursuant to the Distribution Agreement. Pursuant to the Manufacturing Agreement, Surgicraft transferred to Mandaco the right and license to use its technology and intellectual property to manufacture Surgicraft's products, as well as the right to use the name "Surgicraft." A true and accurate copy of the Manufacturing Agreement is appended hereto as Exhibit 4.

7

36. Surgicraft's former owner, Andrew Hull, created Mandaco in 2008 and took control of Mandaco full time upon Centinel's acquisition of Surgicraft, although he remained a Director of Surgicraft. Mandaco and Surgicraft are both located at 16 The Oaks, Clews Road, Redditch Worcestershire B98 7ST, United Kingdom. Mandaco does business under Surgicraft's name. Mandaco is staffed by former Surgicraft employees.

37. From Centinel's inception, John Viscogliosi has served as Chairman and Chief Executive Officer of Centinel, as well as Chairman and Chief Executive Officer of Centinel's predecessor entity, Raymedica.

38. By letter dated August 20, 2008 to Paradigm BioDevices, John Viscogliosi referenced the Distribution Agreement and notified that Centinel, which he identified as successor to Raymedica, had acquired the entire issued share of capital of Surgicraft Group Holdings Limited, which directly owned Surgicraft. The letter instructed that Paradigm BioDevices should "continue to process all future purchase orders through Centinel Spine's wholly owned subsidiary Surgicraft Limited"; to "continue to issue all purchase orders to Surgicraft Limited"; to e-mail the Surgicraft orders to a Centinel address in Minnesota; and to make all current and future payments to an account in the name of Raymedica. A true and accurate copy of John Viscogliosi's August 20, 2008 letter is appended hereto as Exhibit 5.

39. In October 2008, the Defendants caused Surgicraft to terminate the Distribution Agreement, effective December 15, 2008.

40. The termination of the Distribution Agreement by the Defendants entitled Paradigm BioDevices to the Change of Control Payment. Surgicraft has not made that payment.

41. The Defendants induced Surgicraft to breach the Distribution Agreement and to refuse to make the Change of Control Payment to Paradigm BioDevices.

42.     By letter dated December 10, 2008 to Paradigm BioDevices, John Viscogliosi instructed Paradigm BioDevices to "return all consignment stock of Surgicraft in your possession" to Centinel. During December 2008, representatives of Surgicraft and Centinel arrived at Paradigm BioDevices' warehouse in Massachusetts and took possession of the Surgicraft inventory on behalf of Centinel. A true and accurate copy of John Viscogliosi's December 10, 2008 letter is appended hereto as Exhibit 6.

43.     The Surgicraft inventory that was transferred directly from Paradigm BioDevices' warehouse to Centinel had a value of approximately $24,500,000, if Paradigm BioDevices had the opportunity to sell it. The revenue that Surgicraft would have generated had Surgicraft sold it to Paradigm BioDevices would have been approximately $6,800,000.

44.     The Surgicraft inventory that was transferred directly from Paradigm BioDevices' warehouse to Centinel did not represent all of Surgicraft's STALIF TT inventory that Paradigm BioDevices had the right to distribute under the Distribution Agreement. Indeed, Centinel already had possession of some of that STALIF TT inventory.

45.     Since December 2008, Centinel began to distribute, and continues to distribute, Surgicraft's STALIF TT products to Paradigm BioDevices' former customers.

46.     By the time the Defendants took control of Surgicraft in August 2008, they had completely supplanted their will for that of Surgicraft's management, and had induced Surgicraft to deny that Paradigm BioDevices would be entitled to the Change of Control Payment.

47.     Surgicraft surrendered to the instructions of the Defendants prior to Centinel's acquisition of Surgicraft, out of fear that the Defendants would refuse to consummate the acquisition.

48. Surgicraft reversed its position on the Change of Control Payment at the behest, and with the direct involvement, of the Defendants and, in particular, John Viscogliosi and Anthony Viscogliosi.

49. On or about October 28, 2008, Andrew Hull e-mailed a memorandum to Anthony Fennell, another Surgicraft Director, which expresses and demonstrates how Surgicraft surrendered to the instructions of the Defendants prior to Centinel's acquisition. A true and accurate copy of Andrew Hull's memorandum is appended hereto as Exhibit 7.

50. John Viscogliosi and Anthony Viscogliosi were appointed as Directors of Surgicraft Group Holdings Limited on or about August 15, 2008, and they were appointed as Directors of Surgicraft no later than November 20, 2008.

51. On or about August 15, 2008, John Viscogliosi was appointed Chairman and CEO of Surgicraft.

52. Centinel was undercapitalized when it was created.

53. Surgicraft did not receive adequate consideration from Centinel for the sale of its business. The consideration paid for Centinel's purchase of Surgicraft did not take into account the substantial Change of Control Payment due to Paradigm BioDevices from Surgicraft.

54. Once Centinel acquired Surgicraft, all or substantially all of Surgicraft's assets were divested to Centinel and/or other entities owned and/or controlled by the Defendants, rendering Surgicraft functionally insolvent.

55. In 2007, Surgicraft had a positive amount in its shareholders' funds of £1,379,196. In 2008, the amount in Surgicraft's shareholders' funds decreased to a deficiency of £23,161. In 2009, Surgicraft's deficiency had grown to £10,797,681. Indeed, by January 2011, John Viscogliosi, in his capacity as Director of Surgicraft, acknowledged that Surgicraft was no longer

10

a going concern. True and accurate copies of Surgicraft's abbreviated accounts for the years 2007, 2008, and 2009 are appended hereto as Exhibit 8.

### The U.K. Litigation

56. While the parties disputed Paradigm BioDevices' entitlement to the Change of Control Payment, the Defendants, through Surgicraft, won the "race to the courthouse" and sought a declaration in the High Court of Justice Chancery Division in the United Kingdom that Paradigm BioDevices was not entitled to the Change of Control Payment (the "U.K. Litigation").

57. Paradigm BioDevices filed counterclaims against Surgicraft in the U.K. Litigation, seeking payment of the Change of Control Payment.

58. The High Court in the U.K. Litigation was asked to determine the parties' intent vis-à-vis the Change of Control Payment. In contrast to its past representations, Surgicraft claimed that although the parties initially intended for Paradigm BioDevices to be compensated if the Distribution Agreement were terminated at any time upon a change of control of Surgicraft (which was to be conditional based upon time and Paradigm BioDevices' sales), Paradigm BioDevices gave up that right in consideration for a guaranteed amount if the Distribution Agreement were terminated upon a change of control that occurred only during the first year of the Distribution Agreement.

59. After a full trial, the High Court in the U.K. Litigation ruled that the evidence demonstrated that at the time of the formation of the Distribution Agreement, Surgicraft intended that Paradigm BioDevices would receive the greater of either the guaranteed amount or the conditional Change of Control Payment, and that portions of Surgicraft's purported evidence that the guaranteed amount was in lieu of the conditional amount was "fanciful where it is not untruthful." See Approved Judgment dated May 26, 2010, in *Surgicraft Ltd. v. Paradigm*

*BioDevices, Inc.*, High Court of Justice Chancery Division (Christopher Pymont QC), Claim No. HC08C02874, a true and accurate copy of which is appended hereto as Exhibit 9, at ¶ 57(f).

60.     On July 29, 2010, the High Court in the U.K. Litigation entered an interim judgment in favor of Paradigm BioDevices against Surgicraft in the amount of $10 million. See Judgment dated July 29, 2010 in *Surgicraft Ltd. v. Paradigm BioDevices, Inc.*, High Court of Justice Chancery Division (Christopher Pymont QC), Claim No. HC08C02874, a true and accurate copy of which is appended hereto as Exhibit 10.

61.     On or about August 13, 2010, Surgicraft defaulted on the interim judgment of the U.K. Court.

62.     On November 1, 2010, further proceedings were conducted in the U.K. Litigation to determine the exact amount of Paradigm BioDevices' damages. On November 18, 2010, judgment entered in the U.K. Litigation in favor of Paradigm BioDevices against Surgicraft in the amount of $15,189,785.67. See Judgment dated November 18, 2010 in *Surgicraft Ltd. v. Paradigm BioDevices, Inc.*, High Court of Justice Chancery Division (Christopher Pymont QC), Claim No. HC08C02874, a true and accurate copy of which is appended hereto as Exhibit 11.

63.     On November 29, 2010, a final sealed order entered in the amount of $15,189,785.67 in the U.K. Litigation. See Order sealed on November 29, 2010 in *Surgicraft Ltd. v. Paradigm BioDevices, Inc.*, High Court of Justice Chancery Division (Christopher Pymont QC), Claim No. HC08C02874, a true and accurate copy of which is appended hereto as Exhibit 12.

### The Massachusetts Action

64.     On March 11, 2010, Surgicraft filed a Complaint in the Superior Court Department of the Trial Court, Commonwealth of Massachusetts (Plymouth County), in *Surgicraft Ltd. v. Paradigm BioDevices, Inc.*, C.A. No. PLCV2010-0314 (the "Massachusetts Action").

65. Pursuant to a court order in the Massachusetts Action dated October 28, 2010, escrowed funds in the amount of $745,152.75 were distributed to Paradigm BioDevices.

66. On December 13, 2010, Paradigm BioDevices filed an Answer and Counterclaim in the Massachusetts Action, seeking to domesticate and enforce the $15,189,785.67 judgment in its favor in the U.K. Litigation.

67. On March 7, 2011, default judgment entered against Surgicraft in the Massachusetts Action, in the amount of $14,444,632.92, plus interest from December 13, 2010 in the amount of $398,909.28, for a total judgment of $14,843,542.20.[1] A true and accurate copy of the default judgment in the Massachusetts Action is appended hereto as Exhibit 13.

COUNT I: Tortious Interference with Contractual Relations

68. Paradigm BioDevices realleges and incorporates herein the allegations in paragraphs 1 through 67 above.

69. The Distribution Agreement was a binding contract between Paradigm BioDevices and Surgicraft.

70. At all times relevant to this action, the Defendants were aware of the Distribution Agreement and, further, that Surgicraft intended to make the Change of Control Payment to Paradigm BioDevices, pursuant to the Distribution Agreement.

71. The Defendants, separately and in concert, intentionally and with improper motives and means, induced Surgicraft to breach the Distribution Agreement or otherwise render its performance impossible by causing Surgicraft to refuse to make the Change of Control Payment to Paradigm BioDevices.

---

[1] The judgment amount in the Massachusetts Action takes into account an offset of $745,152.75, which amount had been held in escrow and already distributed to Paradigm BioDevices.

72. As a result of the Defendants' interference with Paradigm BioDevices' contractual relationship with Surgicraft, Paradigm BioDevices has been, and continues to be, damaged and is entitled to recover its damages from the Defendants.

## COUNT II:  Fraudulent Transfer

73. Paradigm BioDevices realleges and incorporates herein the allegations in paragraphs 1 through 72 above.

74. The Defendants caused Surgicraft to transfer all or substantially all of its assets to Centinel and/or other entities owned and/or controlled by the Defendants fully knowing that Paradigm BioDevices would not be paid the Change of Control Payment.

75. Surgicraft did not receive reasonably equivalent value in exchange for the transfer of its assets to Centinel and/or other entities owned and/or controlled by the Defendants.

76. At the time Surgicraft transferred its assets, Surgicraft was insolvent or was rendered insolvent as a result of the transfer.

77. At the time Surgicraft transferred its assets, Surgicraft was engaged, or about to engage, in a business or transaction for which its remaining assets were unreasonably small.

78. When Surgicraft transferred its assets to Centinel and/or other entities owned and/or controlled by the Defendants, the Defendants and Surgicraft intended Surgicraft to incur, or believed that Surgicraft would incur, a debt to Paradigm BioDevices beyond Surgicraft's ability to pay it.

79. Upon information and belief, the Defendants caused Surgicraft to transfer its assets to Centinel and/or other entities owned and/or controlled by the Defendants with intent to hinder, delay, or defraud Paradigm BioDevices.

80. By way of the aforementioned transfers, the Defendants have been engaged in a fraudulent diversion of Surgicraft's assets, for which the Defendants are liable to Paradigm BioDevices, which has been, and continues to be, damaged and is entitled to recover its damages from the Defendants.

81. The transfer of Surgicraft's assets should be voided or otherwise recovered to the extent necessary to satisfy Paradigm BioDevices' judgment in the U.K. Litigation and the Massachusetts Action.

### COUNT III: Action for Piercing the Corporate Veil Against John Viscogliosi and Anthony Viscogliosi

82. Paradigm BioDevices realleges and incorporates herein the allegations in paragraphs 1 through 81 above.

83. John Viscogliosi and Anthony Viscogliosi have made no effort to follow the corporate formalities required of a corporation like Centinel and a company like Surgicraft.

84. John Viscogliosi and Anthony Viscogliosi created Centinel as a shell corporation in order to acquire Surgicraft for insufficient consideration that did not take into account an indebtedness Surgicraft owed to Paradigm BioDevices and about which John Viscogliosi and Anthony Viscogliosi had been made fully aware before the acquisition.

85. John Viscogliosi and Anthony Viscogliosi exercised dominion and control over Centinel and Surgicraft and used those companies as their alter ego for their personal benefit by acquiring Surgicraft for less than fair value in light of the Change of Control Payment due to Paradigm BioDevices, pursuant to the terms of the Distribution Agreement, as a result of Centinel's acquisition of Surgicraft.

86. John Viscogliosi and Anthony Viscogliosi caused Surgicraft and Centinel to become indebted to Paradigm BioDevices when they knew Surgicraft and Centinel either were insolvent or would be rendered insolvent by satisfying the indebtedness.

87. John Viscogliosi and Anthony Viscogliosi are the alter ego of both Centinel and Surgicraft, and the corporate veil should be pierced and they should be held personally responsible for Centinel and Surgicraft's debt to Paradigm BioDevices.

88. Failure to pierce the corporate veil and charge John Viscogliosi and Anthony Viscogliosi for Surgicraft's indebtedness to Paradigm BioDevices would be inequitable, inasmuch as Paradigm BioDevices has suffered monetary losses as a direct and proximate result of John Viscogliosi and Anthony Viscogliosi's wrongdoing.

## COUNT IV: Violation of Mass. Gen. L. c. 93A

89. Paradigm BioDevices realleges and incorporates herein the allegations in paragraphs 1 through 88 above.

90. Paradigm BioDevices and the Defendants are engaged in the conduct of trade and commerce.

91. The Defendants, separately and in concert, have engaged in unfair, deceptive, and unlawful acts and unfair methods of competition in violation of M.G.L. c. 93A by, *inter alia*, tortiously interfering with Paradigm BioDevices' contractual relationship with Surgicraft with the intent of depriving Paradigm BioDevices of the benefit of the Distribution Agreement and the Change of Control Payment and by causing Surgicraft to transfer its assets to Centinel and/or other entities owned and/or controlled by the Defendants with the intent to hinder, delay, or defraud Paradigm BioDevices.

16

92. The Defendants willfully and knowingly engaged in these unfair methods of competition and these unfair, deceptive, and unlawful acts and practices.

93. Paradigm BioDevices has been and continues to be damaged by the Defendants' willful and knowing malfeasance and is entitled to an award of actual damages, multiple damages, and attorney's fees.

## PRAYERS FOR RELIEF

WHEREFORE, Paradigm BioDevices respectfully requests that this Court:

1. Enter judgment in favor of Paradigm BioDevices against the Defendants pursuant to Counts I and II in the amount of all damages sustained by Paradigm BioDevices, together with interest, costs, and attorney's fees.

2. Enter judgment in favor of Paradigm BioDevices against Anthony Viscogliosi and John Viscogliosi pursuant to Count III in the amount of all damages sustained by Paradigm BioDevices, together with interest, costs, and attorney's fees.

3. Enter judgment in favor of Paradigm BioDevices against the Defendants pursuant to Count IV for violation of M.G.L. c. 93A, § 2 and award treble, but no less than double, the amount of Paradigm BioDevices' damages for a willful, knowing, and bad faith violation of said statute.

4. Grant such other relief as may be deemed just and appropriate.

## JURY TRIAL DEMAND

Paradigm BioDevices demands a trial by jury on all issues so triable.

Respectfully submitted,

Plaintiff,
PARADIGM BIODEVICES, INC.,
By its attorneys,

*[signature]*

Stephen Y. Chow (SC-7508)
schow@burnslev.com
Lawrence G. Green, Mass. BBO# 209060
*Pro hac vice* motion pending
lgreen@burnslev.com
Michael K. Sugrue, Mass. BBO# 655878
*Pro hac vice* motion pending
msugrue@burnslev.com
BURNS & LEVINSON LLP
125 Summer Street
Boston, MA 02110
(617) 345-3000

Dated: May 19, 2010