UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

PARADIGM BIODEVICES, INC.,

                        Plaintiff,

-vs-

VISCOGLIOSI BROTHERS, LLC,
VISCOGLIOSI & COMPANY, LLC,
PARADIGM SPINE, LLC, CENTINEL SPINE,
INC., JOHN J. VISCOGLIOSI, and ANTHONY
G. VISCOGLIOSI,

                        Defendants.

11 Civ. 3489 (RJH) (MHD)

**MEMORANDUM OPINION
AND ORDER**

---

Richard J. Holwell, District Judge:

      Plaintiff Paradigm BioDevices, Inc. ("Paradigm") is a Massachusetts corporation that entered a distribution agreement with U.K. company Surgicraft, Ltd. ("Surgicraft"), which had since been acquired by defendant Centinel Spine, Inc. ("Centinel"). A dispute arose over whether Paradigm, the distributor, was entitled to a termination payment from Sugicraft, the manufacturer, in the event that a change of control of Surgicraft resulted in the termination of the distribution agreement, as was the case after Centinel took control of Surgicraft. Plaintiff brought an action for the termination payment and obtained a judgment against Surgicraft in a U.K. court, and that judgment was later domesticated in a Massachusetts state court litigation.

      Defendants are New York and Delaware corporations with principal places of business in New York, as well as individuals who reside in New York and hold various leadership positions at the aforementioned defendant corporations. Defendants, generally, are alleged to directly or

indirectly control Surgicraft.  Plaintiff now brings this action, alleging tortious interference with contractual relations between itself and Surgicraft; fraudulent transfer of Surgicraft's assets to avoid payment to plaintiff; actionable conduct for piercing the corporate veil against individual defendants John and Anthony Viscogliosi; violation of Mass. Gen. Laws ch. 93A ("Chapter 93A"), the Massachusetts consumer protection statutes, by engaging in unfair, deceptive, and unlawful acts and methods of competition; and successor liability against Centinel.  Plaintiff cross-moves for a pre-judgment order of attachment against defendant Centinel, and defendants move to dismiss pursuant to Fed. R. Civ. P. 12(b)(6).

After hearing oral argument on November 9, 2011, the Court dismissed the claims of tortious interference, piercing the corporate veil, and successor liability as insufficiently pled and for the reasons stated on the record.  (Transcript of Oral Argument, November 9, 2011, at 55-58.) The Court declined to dismiss the fraudulent transfer claim against Centinel but reserved decision on whether the fraudulent transfer claim is actionable against defendants *other* than Centinel.  The Court also reserved decision on the sufficiency of the Chapter 93A claim under Massachusetts law.  For the following reasons, the Court now concludes (1) that the fraudulent transfer claim survives only against Centinel and (2) the Chapter 93A claim survives against Centinel and John Viscogliosi.  Plaintiff is given leave to move to amend any dismissed claims, provided it can adequately allege the factual predicate for such claim consistent with the Court's rulings.  Plaintiff's motion for a pre-judgment order of attachment against defendant Centinel is DENIED for the reasons stated at the November 9 hearing.  (Transcript of Oral Argument, November 9, 2011, at 58-59.)

# DISCUSSION

## I. The Fraudulent Transfer Claim Is Dismissed Against All Defendants Other than Centinel

### A. New York Law Applies Under New York's Choice-of-Law Rules

New York's choice-of-law rules govern the fraudulent conveyance claim in the present action because in determining which state's substantive laws apply to a fraudulent conveyance claim, "a federal court sitting in diversity must apply the conflict of laws rules of the state in which the federal court sits." *GFL Advantage Fund, Ltd. v. Colkitt*, No. 03 Civ. 1256 (JSM), 2003 WL 21459716, at *2 (S.D.N.Y. June 24, 2003) (citing *Cantor Fitzgerald Inc. v. Cantor,* 313 F.2d 704, 710 (2d Cir. 2002)). The first step of New York's choice-of-law rules is to determine whether there is an actual conflict between the laws of the jurisdictions involved. *Drenis v. Haligiannis*, 452 F.Supp.2d 418, 426 (S.D.N.Y. 2006) (quoting *In the Matter of Allstate Ins. Co.,* 613 N.E.2d 936 (N.Y. 1993)). If there is a conflict of law in tort actions, New York's choice-of-law rules use an "interest analysis" that applies the laws of the jurisdiction with the greatest interest in the application of its law "based on the occurrences within each jurisdiction, or contacts of the parties with each jurisdiction, that 'relate to the purpose of the particular law in conflict.'" *Pension Comm. of Univ. of Montreal Pension Plan v. Banc. of Am. Secs., LLC*, 446 F.Supp.2d 163, 192 (S.D.N.Y. 2006) (internal citations omitted); *see AroChem Int'l, Inc. v. Buirkle,* 968 F.2d 266, 269-70 (2d Cir. 1992); *Advanced Portfolio Tech., Inc. v. Advanced Portfolio Tech, Ltd.*, No. 94 Civ. 5620 (JFK), 1999 WL 64283, at *5 (S.D.N.Y. Feb. 8, 1999). "When the law is one which regulates conduct, such as fraudulent conveyance statutes, the law of the jurisdiction where the tort occurred will generally apply because that jurisdiction has the greatest interest in regulating behavior within its borders", *Pension Comm. of Univ. of*

*Montreal*, 446 F.Supp.2d at 192 (internal quotations and citations omitted), "and parties engaging in those activities would have a reasonable expectation that their activities would be governed by the law of the state in which they are located and reside." *GFL Advantage Fund*, 2003 WL 21459716, at *3.

New York law applies to the fraudulent transfer claim in the present action because there is no material conflict between the laws of New York and Massachusetts governing this claim. Both New York and Massachusetts have adopted the Uniform Fraudulent Conveyance Act. *In re Morse Tool, Inc.*, 108 B.R. 384, 386 (Bankr. D.Mass. 1989); *see* Mass. Gen. Laws ch. 109A, §§ 1-13 (1999); N.Y. Debt. & Cred. Law ("DCL") §§ 270-281 (McKinney 1999). In all relevant respects, Massachusetts's fraudulent conveyance statute is identical to its New York counterpart, the New York Debtor & Creditor Law, and both the Second Circuit and New York courts have encouraged consultation of other jurisdictions' case law to promote a uniform interpretation of the UFCA. *In re Sharp Int'l Corp.*, 302 B.R. 760 (Bankr. E.D.N.Y. 2003) (citing *Boston Trading Group, Inc. v. Burnazos,* 835 F.2d 1504 (1st Cir. 1987)), *aff'd*, 403 F.3d 43 (2d Cir. 2005).[1] In short, in the absence of evidence showing a conflict between the laws of New York and Massachusetts governing the fraudulent transfer claim in the present action, no choice of law

---

[11] In its opposition to defendants' motion to dismiss, Plaintiff challenges *In re Sharp Int'l Corp.*'s position that the Massachusetts and New York conveyance statutes are "identical in all relevant respects" by pointing out Massachusetts's adoption of the Uniform Fraudulent Transfers Act ("UFTA") in 1996 had repealed the UFCA, the statute relied upon by then First Circuit Judge Stephen Breyer's 1987 *Boston Trading Group* opinion on which *In re Sharp Int'l Corp.* relies. (Opp'n Mot. Dismiss 25.) However, plaintiff does not point to any specific differences between the UFTA and UFCA that show a conflict between Massachusetts's UFTA and New York's fraudulent conveyance statute to warrant the application of Massachusetts law to the fraudulent transfer claim in the present action. Furthermore, "[t]he changes between the UFCA and the UFTA are primarily ones of degree, modernization and evolution, as opposed to changes in the substantive law, with the exception of the inclusion of a new preference recovery provision in the UFTA" that is not relevant to the present action. Paul P. Daley & Mitchell Appelbaum, *The Modernization of Massachusetts Fraudulent Conveyance Law: The Adoption of the Uniform Fraudulent Transfer Act*, 82 MASS. L. REV. 337, 337 (1998). The new preference recovery provision in the UFTA makes it an actionable "fraudulent transfer" for "a preferential transfer by an insolvent debtor to an insider to satisfy an antecedent debt. This action is only available to creditors of the debtor who were creditors at the time of the transfer." *Id.* at 342. It has no analogy in the present case, since there is no evidence that Paradigm was a creditor of Surgicraft at the time of the allegedly fraudulent asset transfer.

analysis is necessary and this Court applies New York law.  *See Int'l Bus. Mach. Corp. v. Liberty Mut. Ins. Co.*, 363 F.3d 137, 143 (2d Cir. 2004).

### B.  The New York Uniform Fraudulent Conveyance Act, DCL §§ 270-281

The New York law governing fraudulent conveyances is the New York Uniform Fraudulent Conveyance Act ("UFCA"), codified in DCL §§ 270-281 (McKinney 1999).  Under the New York UFCA, a fraudulent conveyance can be constructive or actual.  A transfer made without fair consideration can constitute a "constructive fraud" regardless of the transferor's actual intent,[2] whereas an "actual fraud" is made "with actual intent, as distinguished from intent presumed in law, to hinder, delay, or defraud either present or future creditors".  *HBE Leasing Corp. v. Frank*, 48 F.3d 623 (2d Cir. 1995); *e.g.* DCL § 273-a (one of several types of constructive fraud); *see* DCL § 276 (actual fraud).  DCL § 273-a defines one of several situations that give rise to constructive fraud:

> Every conveyance made without fair consideration when the person making it is a defendant in an action for money damages or a judgment in such an action has been docketed against him, is fraudulent as to the plaintiff in that action without regard to the actual intent of the defendant if, after final judgment for the plaintiff, the defendant fails to satisfy the judgment.

What constitutes "fair consideration" is defined as follows in DCL § 272:

> Fair consideration is given for property, or obligation,
>
> a. When in exchange for such property, or obligation, as a fair equivalent therefor, and in good faith, property is conveyed or an antecedent debt is satisfied, or

---

[2] DCL §§ 273-275 govern and require the following elements for constructive fraudulent conveyance claims: "(1) that the transfer was made without fair consideration; and (2) either (a) the debtor was insolvent or was rendered insolvent by the transfer, (b) the debtor was left with unreasonably small capital, or (c) the debtor intended or believed that it would incur debts beyond its ability to pay as the debts matured."  *In re Hydrogen, L.L.C*, 431 B.R. 337, 354 (Bankr. S.D.N.Y. 2010); *see Grace v. Bank Leumi Trust Co. of N.Y.*, 443 F.3d 180, 188 (2d Cir. 2006) (setting out the elements required for a constructive fraudulent conveyance claim under DCL § 273-a).

5

b. When such property, or obligation is received in good faith to secure a present advance or antecedent debt in amount not disproportionately small as compared with the value of the property, or obligation obtained.

Fed. R. Civ. P. 9(b)'s pleading requirements for particularity apply to fraudulent conveyance claims under DCL § 273 and § 276. *Cargo Partner AG v. Albatrans Inc*., 207 F.Supp.2d 86, 115-16 (S.D.N.Y. 2002), *aff'd*, 352 F.3d 41 (2d Cir. 2003).  A DCL § 276 claim of actual fraudulent conveyance "must plead the requisite mental state [of actual intent] with particularity" to meet the heightened standard of [Fed. R. Civ. P. 9(b)]. *Atlanta Shipping Corp. v. Chemical Bank,* 818 F.2d 240, 251 (1987); *Waite v. Schoenbach*, No. 10 Civ. 3439 (RMB), 2010 WL 4456955, at *5 (S.D.N.Y. Oct. 29, 2010) (internal quotations and citation omitted). The burden of proving "actual intent" to defraud creditor(s) is on the party seeking to set aside the conveyance, and if actual intent is proven, the conveyance will be set aside regardless of the fairness of the consideration given. *In re Sharp Int'l Corp*., 403 F.3d 43, 56 (2d Cir. 2005). Constructive fraudulent conveyance claims under DCL § 273, because they do not require the intent to defraud as an element, are not held to the heightened pleading requirements of Fed. R. Civ. P. 9(b) but still cannot survive a motion to dismiss on conclusory allegations alone. *Waite*, 2010 WL 4456955, at **6-7 (finding plaintiff's allegations like "transfers were made without fair consideration" are conclusory allegations that cannot withstand a motion to dismiss).

**C. The Fraudulent Transfer Claim Is Only Actionable Against Defendant Centinel**

As the Court held at the November 9 hearing, plaintiff's fraudulent transfer claim is sufficiently pled to survive a motion to dismiss as to Centinel, an alleged transferee.  However, plaintiff seeks to recover damages from *all* defendants for this claim, (Am. Compl. ¶ 80.)  Under New York law a fraudulent conveyance claim is actionable only against the transferee, or

6

Centinel in this case, and not against third party aiders and abettors of the transfer.  Plaintiff alleges that defendants "caused Surgicraft to transfer all or substantially all of its assets to Centinel *and/or other entities* owned and/or controlled by the Defendants fully knowing that [plaintiff] would not be paid the Change of Control Payment."   (Am. Compl. ¶ 74.) (emphasis added).  However, the pleadings only support the inference that an asset transfer from Surgicraft to Centinel, but not to any other defendant, might have taken place.

The proper remedy in a fraudulent conveyance claim is the nullification of the transfer by returning the property at issue back to the transferor.  *Grace v. Bank Leumi Trust Co. of N.Y.*, 443 F.3d 180, 189 (2d Cir. 2006); *Geren v. Quantum Chem. Corp.*, 832 F.Supp. 728, 737 (S.D.N.Y. 1993).  The relief that a defrauded creditor is entitled to in making such a claim is limited to what it could have obtained had there been no conveyance at all.  *Marine Midland Bank v. Murkoff*, 508 N.Y.S.2d 17, 23 (App. Div. 2d Dep't 1986).  A fraudulent conveyance action "does not create an independent remedy of money damages against third parties who aided the debtor's transfer at all."  *Geren*, 832 F.Supp. at 737 (citing *Fed. Deposit Ins. Corp. v. Porco,* 552 N.E.2d 158, 159 (N.Y. 1990)).  The New York Court of Appeals has rejected the proposition that a fraudulent transfer claim "created a creditor's cause of action in conspiracy, assertable against nontransferees or nonbeneficiaries solely for assisting in the conveyance of a debtor's assets."  *Geren*, 832 F.Supp. at 737 (quoting *Fed. Deposit Ins. Corp.,* 552 N.E.2d at 159).

In its opposition to defendant's motion to dismiss, plaintiff argues that the fraudulent transfer claim is actionable against defendants other than Centinel because they are alleged beneficiaries of Surgicraft's assets.  This is a conclusory statement unsupported by the pleadings and fails the pleading requirements for particularity under Fed. R. Civ. P. 9(b).  Accordingly, the fraudulent

transfer claim is dismissed against all defendants other than Centinel, the sole beneficiary of the alleged transfer in this case.

## II. The Mass. Gen. Laws ch. 93A Claim Is Dismissed Against All Defendants Other Than Centinel and John Viscogliosi

Section 11 of Chapter 93A provides "a private cause of action to a person who is engaged in business and who suffers a loss as a result of an unfair or deceptive act or practice by another person also engaged in business." *Manning v. Zuckerman,* 444 N.E.2d 1262, 1264 (Mass. 1983) (internal citation omitted). The original purpose of Mass. Gen. Laws ch. 93A ("Chapter 93A"), Massachusetts's consumer protection statutes, is to improve the commercial relationship between consumers and business persons and to encourage more equitable behavior in the marketplace. The addition of § 11 to Chapter 93A extended the same protections specifically to persons engaged in trade or commerce in business transactions with other persons also engaged in trade or commerce. *Lily Transp. Corp. v. Royal Institutional Servs., Inc*., 832 N.E.2d 666, 673 (Mass. App. Ct. 2005) (internal quotation marks and citations omitted); *accord Darviris v. Petros*, 812 N.E.2d 1188, 1192 (Mass. 2004); *Lantner v. Carson*, 373 N.E.2d 973, 976 (Mass. 1978) (concluding that with respect to Chapter 93A, the Massachusetts Legislature intended "persons engaged in the conduct of any trade or commerce" to "refer specifically to individuals acting in a business context"). Plaintiff's Chapter 93A claim is dismissed against all defendants others than Centinel and John Viscogliosi because the complaint fails to allege any inequitable conduct on the part of defendants Viscogliosi Brothers, LLC, Viscogliosi & Company, LLC, Paradigm Spine, LLC, or Anthony Viscogliosi that could constitute an actionable Chapter 93A claim.

**A.  An Allegation of Fraudulent Transfer Is Actionable Under Chapter 93A**

A violation of Chapter 93A requires more than negligence and must involve conduct based on dishonesty, fraud, deceit, or misrepresentation.  *See Darviris*, 812 N.E.2d at 1192.  Although whether a particular set of acts is unfair or deceptive is a question of fact, what qualifies as a Chapter 93A violation is a question of law.  *Lily Transp. Corp.*, 832 N.E.2d at 673 n.16 (citing *Schwanbeck v. Federal-Mogul Corp.,* 578 N.E.2d 789, 803 (Mass. App. Ct. 1991), *rev'd on other grounds,* 592 N.E.2d 1289 (Mass. 1992)).  Plaintiff asserts two types of unfair practices, tortious interference with contractual relationship and fraudulent transfer, as grounds for its Chapter 93A claim.  (Amend. Compl. ¶ 91.)  While the tortious interference claim was dismissed at the November 9 hearing, the fraudulent transfer claim survives and is actionable under Chapter 93A.  *See Angiodynamics, Inc. v. Biolitec, Inc.*, No. 09–cv–30181–MAP, 2011 WL 3157312, at *8 (D. Mass. July 25, 2011).  In *Angiodynamics*, the claims arose from the alleged breach of a supply and distribution agreement between the plaintiff and a subsidiary corporate defendant.  The parent corporation, also a defendant in the litigation, allegedly looted the subsidiary corporation by fraudulently removing its assets with full awareness of the agreement between plaintiff and the subsidiary, thereby undermining the subsidiary's ability to meet its financial obligations to plaintiff.  *See* 2011 WL 3157312, at **1-2.  The plaintiff asserted*, inter alia*, claims of fraudulent transfer and Chapter 93A against all defendants, including an individual defendant who was an officer of both the subsidiary and parent corporations.  (First Amended Complaint and Demand for Jury Trial ¶¶ 152-167, *Angiodynamics, Inc. v. Biolitec, Inc.*, No. 09–cv–30181–MAP, (D. Mass. March 26, 2010), ECF No. 7.)  In denying defendants' motion to dismiss the Chapter 93A claim, the District Court rejected the argument that the complaint alleged nothing more than a simple breach of contract that was not actionable under Chapter 93A.  Since plaintiff alleged a

fraudulent transfer of assets from the subsidiary to the parent, and since Chapter 93A "certainly encompasses fraud," an actionable "unfair or deceptive act or practice" was properly pled under the statute.  *See Angiodynamics*, 2011 WL 3157312, at *8.

### B. Actionable Conduct Occurred "Primarily and Substantially" in Massachusetts

A claim can be brought under Mass. Gen. Laws ch. 93A, § 11 only if the actionable conduct took place "primarily and substantially" in Massachusetts.  The burden of proof is on the partie(s) claiming that the underlying action did not occur "primarily and substantially" in Massachusetts, namely on the defendants in this case.[3]  In determining whether conduct occurred "primarily and substantially" in Massachusetts within the meaning of Mass. Gen. Laws ch. 93A, § 11, the First Circuit has followed two separate−albeit not necessarily conflicting−approaches.  The earlier approach looks to the following three factors: (1)"where the defendant committed the deceptive or unfair acts or practices"; (2)"where the plaintiff received and acted upon the deceptive or unfair statements"; and (3)"the situs of plaintiff's losses due to the unfair or deceptive acts or practices."  *Clinton Hosp. Ass'n v. Corson Group, Inc.*, 907 F.2d 1260, 1265-66 (1st Cir. 1990) (citing *Bushkin Assocs., Inc. v. Raytheon Co.,* 473 N.E.2d 662, 664 (Mass. 1985)); *accord KPS & Assocs., Inc. v. Designs by FMC, Inc.,* 318 F.3d 1, 24 (1st Cir. 2003).

#### 1. The "Center of Gravity" Test

After the Massachusetts Supreme Judicial Court issued its opinion in *Kuwaiti Danish Computer Co. v. Digital Equip. Corp.*,[4] which concluded that the test for whether an action occurred primarily and substantially in Massachusetts "is not a determination that can be reduced

---

[3] *See* Mass. Gen. Laws ch. 93A, § 11 ("No action shall be brought or maintained under this section unless the actions and transactions constituting the alleged unfair method of competition or the unfair or deceptive act or practice occurred primarily and substantially within the commonwealth. For the purposes of this paragraph, the burden of proof shall be upon the person claiming that such transactions and actions did not occur primarily and substantially within the commonwealth.").
[4] 781 N.E.2d 787 (Mass. 2003).

10

to any precise formula", the First Circuit abandoned the three-factor test and opted for *Kuwaiti*'s fact-intensive "center of gravity" test instead.  *See Kenda Corp. v. Pot O'Gold Money Leagues, Inc.,* 329 F.3d 216, 235 (1st Cir. 2003).  The "center of gravity" test recognizes that "[s]ignificant factors that can be identified for one case may be nonexistent in another.  Any determination necessarily will be fact intensive and unique to each case." *Kuwaiti Danish Computer Co.*, 781 N.E.2d at 798.  Mass. Gen. Laws ch. 93A, § 11 suggests an approach not based on a test of particular factors, but one "in which a judge should, after making findings of fact, and after considering those findings in the context of the entire § 11 claim, determine whether the center of gravity of the circumstances that give rise to the claim is primarily and substantially within the Commonwealth." *Id.* at 799.

At the same time, the First Circuit has also noted that the *Kuwaiti* "center of gravity" test has not made the earlier three-factor apporach irrelevant, or overruled earlier Massachusetts decisions' reliance on Chapter 93A's situs requirement in, "for example, situations in which a misrepresentation is made in Massachusetts." *See Uncle Henry's Inc. v. Plaut Consulting Co.,* 399 F.3d 33, 45 (1st Cir. 2005); *accord Henry v. Nat'l Geographic Soc'y*, 147 F.Supp.2d 16, 23 (D.Mass. 2001) (noting that the general policy behind Chapter 93A is the protection against deceptions that occur in Massachusetts).  The pleadings satisfy two of three prongs in the three-factor apporach, which is still relevant despite of having been replaced by the "center of gravity" test in Massachusetts federal courts.  First, plaintiff alleges that Massachusetts was where plaintiff received and relied upon a misrepresentation from defendants.  At a meeting with plaintiff's corporate representatives in Boston around August 2008, John and Marc Viscogliosi on behalf of the defendants allegedly confirmed their plan to acquire Surgicraft and discussed the payment that would be owed to plaintiff upon termination of the distribution agreement between

11

plaintiff and Surgicraft. (Amend. Compl. ¶¶ 32-33.) Second, Massachusetts, by being plaintiff's domicile, was also the situs of plaintiff's injury.[5] In deciding on a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the Court must accept all factual allegations as true and draw all reasonable inferences in favor of plaintiff. *See ECA & Local 134 IBEW Joint Pension Trust of Chi. v. JP Morgan Chase Co.,* 553 F.3d 187, 196 (2d Cir. 2009).

### C. The "Commercial Relationship" Requirement Is Met Against Defendants Centinel and John Viscogliosi

"As a threshold matter, analysis of the applicability of [Chapter 93A, § 11] requires a dual inquiry whether there was a commercial transaction between a person engaged in trade or commerce and another person engaged in trade or commerce, such that they were acting in a business context." The underlying rationale is that Chapter 93A, § 11 is "not available to parties in a strictly private transaction, where the undertaking is not in the ordinary course of a trade or business." *Milliken & Co. v. Duro Textiles, LLC*, 887 N.E.2d 244, 259 (Mass. 2008) (internal quotations omitted); *accord Santander Consumer USA Inc. v. Walsh*, 762 F.Supp.2d 217, 240 (D.Mass. 2010).

Defendants argue that the Chapter 93A claim fails because plaintiff does not allege a "commercial relationship" between plaintiff and any of the defendants. Defendants rely on *Milliken*[6] and *Law Offices of Jeffrey S. Glassman v. Palmisciano*[7]; in both cases, the court found

---

[5] Admittedly, plaintiff cannot invoke the protection of Chapter 93A on the *sole* basis that Massachusetts, by being plaintiff's state of domicile, is the place of injury. *Yankee Candle Co. v. Bridgewater Candle Co.*, 107 F.Supp.2d 82, 89 (D.Mass. 2000) ("When the place of injury, however, is the only factor weighing in favor of a claimant, the admonition of Massachusetts courts that liability under chapter 93A is not to be imposed lightly is particularly relevant.") (internal quotation marks and citation omitted); *Am. Mgmt. Servs., Inc. v. George S. May Int'l Co.*, 933 F.Supp. 64, 68 (D.Mass. 1996) ("Something more than a Massachusetts plaintiff is required to invoke the provisions of Chapter 93A").

[6] 887 N.E.2d 244 (Mass. 2008).
[7] 690 F.Supp.2d 5 (D.Mass. 2009).

that Chapter 93A did not apply because there was no commercial relationship between the parties. In *Miliken*, where an unsecured creditor made a Chapter 93A claim that secured creditors orchestrated a scheme to acquire debtor's assets while shedding debtor's debts to unsecured creditors, the court found that the parties were not "engaged in trade or commerce" with each other and therefore not acting in a "business context"; the only dealings between the parties outside the litigation occurred at debt restructuring discussions during the debtor's bankruptcy proceedings. 887 N.E.2d at 259. In *Law Offices of Jeffrey S. Glassman*, the court held that a client's former attorney could not make a Chapter 93A claim against the successor attorney due to a lack of "commercial relationship" between the two, since their "sole contact appears to have been in connection with litigation". 690 F.Supp.2d at 19.

The present case satisfies both prongs of the "commercial relationship" against defendants Centinel and John Viscogliosi in that plaintiff and these two defendants were engaged in "trade or commerce", and there was a "commercial transaction" between them.[8] Unlike *Miliken* and *Law Offices of Jeffrey S. Glassman*, upon which defendants rely, pleadings sufficiently allege plenty of business contacts between plaintiff and the two defendants prior to the current litigation. Plaintiff allegedly attended a meeting in Boston around August 1, 2008 with John Viscogliosi to discuss the plan to acquire Surgicraft and the payment that would be owed to plaintiff upon termination of the distribution agreement. In a letter dated August 20, 2008, John Viscogliosi in his capacity of Chairman & CEO of Centinel notified plaintiff that

---

[8] *But see Lily Transp. Corp. v. Royal Institutional Servs., Inc*., 832 N.E.2d 666, 689 (Mass. App. Ct. 2005) (Laurence, J., dissenting) (noting that in a case where the plaintiff contractor, believing it had an oral contract with the defendant corporation, sued after the corporation ceased operations and failed to pay for plaintiff's services, Chapter 93A, §11's purpose "would not be furthered by foisting the heavy burden of liability . . . upon a party to an informal contractual relationship that was initially entered into optimistically and deemed mutually favorable to both sides but which unexpectedly turned sour … . Such a commonplace casualty of our rough-and-tumble free enterprise system is simply not the type of serious marketplace misbehavior that [Chapter 93A] was aimed at.").

Centinel has acquired the entire issued share capital of Surgicraft; in that same letter, John Viscogliosi also gave plaintiff directions for the processing of future purchase orders and payments. In another letter dated December 10, 2008 to plaintiff, John Viscogliosi in his capacity as a Surgicraft director notified plaintiff that the distribution agreement between Surgicraft and plaintiff was about to terminate, requested the return of intangible assets like customer correspondence and customer prospect lists, and asked for the return of consignment stock to Centinel. (Amend. Compl. 32; Exs. 5, 6.)

## CONCLUSION

For the reasons stated on record supplemented by the foregoing points, defendants' Motion for a Pre-judgment Order of Attachment Against Defendant Centinel Spine, Inc. [18] is denied. Defendants' Motion to Dismiss [35] is GRANTED in part, DENIED as to Centinel on the fraudulent transfer claim, and DENIED as to Centinel and John Viscogliosi on the Chapter 93A claim under Massachusetts law.

SO ORDERED.

Dated: New York, New York
February 2, 2012

Richard J. Holwell
United States District Judge