UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| PARADIGM BIODEVICES, INC., <br> Plaintiff, <br><br> vs. <br><br> CENTINEL SPINE, INC., and <br> JOHN J. VISCOGLIOSI, <br> Defendants | 1:11-cv-03489 (JMF) (MHD) <br> ECF Case <br><br> **THIRD AMENDED COMPLAINT** <br> **AND JURY DEMAND** |

## Nature of Action

This is an action for the recovery of monetary damages, arising out of the wrongful conduct of the Defendants in jointly and severally "looting" the Plaintiff's prior supplier of medical instruments, Surgicraft Limited of the United Kingdom ("Surgicraft"), so as to prevent the current, remaining shell from paying to the Plaintiff a debt on a judgment awarded by the High Court of Justice Chancery Division in the United Kingdom, which has been domesticated in a Massachusetts state court in the amount of $14,843,542.20.

## The Parties

1. Plaintiff Paradigm BioDevices, Inc. ("Paradigm BioDevices") is a duly organized Massachusetts corporation with a principal place of business in Rockland, Massachusetts.

2. Defendant Centinel Spine, Inc. ("Centinel") is a Delaware corporation that has a principal place of business at 505 Park Avenue, 14th Floor, New York, New York.

3. Defendant John J. Viscogliosi ("John Viscogliosi") is an individual who resides at 310 East 53rd Street, New York, New York. John Viscogliosi is the Chairman and Chief Executive Officer of both Centinel and Surgicraft. He is also a principal and member of

Viscogliosi Brothers along with his brothers Anthony G. Viscogliosi and Marc R. Viscogliosi. Herein "Viscogliosi Brothers" means "Viscogliosi Bros." and its principals.

### Jurisdiction and Venue

4. Pursuant to 28 U.S.C. § 1332, this Court has diversity jurisdiction over this matter because the matter in controversy exceeds $75,000, exclusive of interest and costs, and is between citizens of different states.

5. Pursuant to 28 U.S.C. § 1391(a), venue is proper in this Court because all of the Defendants either reside or have a principal place of business in this judicial district.

### Underlying Facts
### Distribution Agreement and Change of Control Payment

6. At all times relevant hereto, Paradigm BioDevices has been a medical device manufacturer and distributor specializing in advanced spinal medicine and science.

7. On or about October 27 2004, Paradigm BioDevices and Surgicraft, a medical device manufacturer based in the United Kingdom, entered into an exclusive distribution agreement, which was amended and restated by further written contract dated March 7, 2005 and which Surgicraft executed on March 10, 2005 (the "Distribution Agreement"). A true and accurate copy of the Distribution Agreement is appended hereto as Exhibit 1.

8. Pursuant to the Distribution Agreement, Paradigm BioDevices sold Surgicraft products to hospitals and medical professionals throughout the United States. One of Surgicraft's devices that Paradigm BioDevices was especially successful in marketing was a mechanical spinal fixation system known as "STALIF TT," which is commonly referred to as "STALIF."

9. Because Surgicraft expressed a desire to find a buyer for its company as soon as possible, Paradigm BioDevices and Surgicraft agreed, *inter alia,* that Paradigm BioDevices would

be entitled to a payment in the event that Surgicraft was acquired by a company that then terminated the Distribution Agreement (the "Change of Control Payment").

10. At the time it entered into the Distribution Agreement, Surgicraft understood and intended that it would be obligated to make the Change of Control Payment to Paradigm BioDevices in the event that Surgicraft was acquired by a company that then terminated the Distribution Agreement.

### The Trademark Action

11. Viscogliosi Bros. is a private equity and merchant banking firm focused on the medical device field and, more particularly, musculoskeletal and orthopedic technology.

12. In 2004, Viscogliosi Bros. formed a portfolio company called Spine Motion, LLC, which was renamed Paradigm Spine, LLC ("Paradigm Spine") in 2005, sharing the same 505 Park Avenue, New York, New York offices. Prompted by confusion between the names of their companies, in November 2005, the President of Paradigm BioDevices, Michael O'Neill, met with Marc Viscogliosi, the Chief Executive Officer of Paradigm Spine in Dallas, Texas to discuss the dispute regarding the trademark and the confusion it was causing. The parties met again in October 2006 at Loan Airport (Au Bon Pain) in Boston in an effort to resolve their differences. O'Neill provided Mark Viscogliosi with confidential information about Paradigm under a confidentiality agreement the parties signed before the meeting. The parties discussed a strategic distribution alliance, but Paradigm Spine rejected the proposed arrangement.

13. On January 24, 2007, Paradigm BioDevices filed an action in U.S. District Court for the District of Massachusetts *(Paradigm BioDevices, Inc. v. Paradigm Spine, LLC,* CA. No. 1:07- cv-10127-DPW) against Paradigm Spine, asserting claims for trademark

3

infringement, false designation of origin, and unfair competition (the "Trademark Action").

14. In the Fall of 2007, during the discovery phase of Paradigm BioDevices' Trademark Action, Paradigm Spine demanded proof of Paradigm BioDevices' damages. In response, Paradigm BioDevices produced to Paradigm Spine its financials and balance sheets, marked "Confidential," which included information about Paradigm BioDevices' sources of revenue and the lucrative Distribution Agreement between Paradigm BioDevices and Surgicraft.

15. After receiving the confidential information from Paradigm BioDevices in September 2007 during discovery in the Trademark Action, Paradigm Spine shared it with the Viscogliosi Brothers, which the Defendants have not denied.

16. In January 2008, Paradigm Spine settled with Paradigm BioDevices in the Trademark Action and subsequently delivered a settlement check to Paradigm BioDevices.

17. On January 16, 2008, Paradigm BioDevices and Paradigm Spine filed a Stipulation of Dismissal in the Trademark Action, and the case was closed that day.

### Defendants' Purchase of Surgicraft

18. Upon information and belief, Viscogliosi Brothers became interested in acquiring Surgicraft after learning, through discovery in the Trademark Action, of the considerable profits Paradigm BioDevices realized through distribution of Surgicraft products.

19. Upon information and belief, in or about February 2008, Viscogliosi Brothers, using the confidential information obtained from Paradigm BioDevices through discovery in the Trademark Action, decided to form a new company that would offer to buy the entire issued share of Surgicraft and, at the same time, acquire the entire issued share of Raymedica, LLC

4

("Raymedica"), a Delaware limited liability company based in Minneapolis, Minnesota that Viscogliosi Bros. had earlier founded.

20. On or about February 27, 2008, John Viscogliosi met with Surgicraft's owner to discuss the plan of Viscogliosi Bros. and principals to acquire Surgicraft.

21. John Viscogliosi understood from his discussions with Surgicraft that Paradigm BioDevices would be entitled to the Change of Control Payment upon an acquisition of Surgicraft and subsequent termination of the Distribution Agreement. See February 27, 2008 memorandum from Surgicraft's legal counsel to John Viscogliosi, a true and accurate copy of which is appended hereto as Exhibit 2, at ¶ 3.

22. In March 2008, while Paradigm BioDevices and Surgicraft were negotiating terms for a new distribution agreement, Surgicraft's counsel inadvertently provided Paradigm BioDevices with a draft agreement that contained a mark identifying the document file name, in part, *as* "Acquisition by Viscogliosi."

23. On March 27, 2008, after Paradigm BioDevices confronted Surgicraft about the Viscogliosi's involvement, Surgicraft denied that a deal was imminent, but reiterated its intent that Paradigm BioDevices would receive the Change of Control Payment should any acquisition occur. See March 27, 2008 e-mail from Surgicraft's then Chairman and Chief Executive Officer, Andrew Hull, to Paradigm BioDevices, a true and accurate copy of which is appended hereto as Exhibit 3.

24. Paradigm BioDevices and Surgicraft continued to negotiate the terms of a new agreement, but it was understood at all times during those negotiations that the Distribution Agreement provided for a payment to Paradigm BioDevices in the event of a change of control of Surgicraft.

25.     On or about August 1, 2008, John Viscogliosi and Marc Viscogliosi, on behalf of Viscogliosi Brothers, met in Boston, Massachusetts with Paradigm BioDevices' President, Michael O'Neill, and its Vice President of Sales, Garrett deBorst. At that time, John Viscogliosi confirmed that the Viscogliosi Brothers were buying Surgicraft and the parties reached an agreement that Viscogliosi Brothers would also buy Paradigm BioDevices for $12,000,000. Viscogliosi Brothers subsequently refused to proceed with that purchase of Paradigm BioDevices.

### The Defendants' Efforts to Render Surgicraft Insolvent

26.     The Defendants fraudulently concealed from Paradigm BioDevices the fact that they had began to take action to render Surgicraft insolvent.

27.     On or about August 15, 2008, in a complex "Contribution and Exchange" transaction arranged by the Defendants involving Surgicraft shareholders and "representatives" of Raymedica, of which John Viscogliosi was Chairman and Chief Executive Officer and which had been converted or folded into Centinel for the transaction, essentially all the shares of Surgicraft were transferred to Centinel. As part of the transaction, multiple existing agreements of Surgicraft and Raymedica, for consultancy, research and distribution were acknowledged and transferred to Centinel. The Paradigm BioDevices' Distribution Agreement was not among the agreements so transferred.

28.     Also as part of the August 15, 2008 transaction, Centinel, Surgicraft, and a company called Mandaco 569 Limited ("Mandaco"), operating under the trade name Surgicraft, also established for the transaction, entered into a three-party manufacturing agreement (the "Manufacturing Agreement"), through which Centinel appointed Mandaco, on its behalf, as the sole and exclusive manufacturer of those certain products then being manufactured, marketed,

and/or sold or proposed to be developed, designed, manufactured, marketed, and/or sold by Surgicraft, including the STALIF TT products that Paradigm BioDevices had been distributing for Surgicraft pursuant to the Distribution Agreement. Pursuant to the Manufacturing Agreement, Surgicraft transferred to Mandaco the right and license to use its technology and intellectual property to manufacture certain of Surgicraft's products, as well as the right, indeed the obligation, to use the name "Surgicraft," ultimately for the benefit of Centinel. A true and accurate copy of the Manufacturing Agreement is appended hereto as Exhibit 4. Yet another part of the August 15, 2008 transaction was a "Business Purchase Agreement" that transferred to Mandaco Surgicraft's full rights (including intellectual property rights) to other Surgicraft products in production or development, its employees and its real property interests. Additionally, Mandaco was given custody of the Surgicraft bank account.

29. Surgicraft's former majority owner, Andrew Hull, took control of Mandaco in 2008 full time upon Centinel's acquisition of Surgicraft, although he remained a Director of Surgicraft. Mandaco and Surgicraft are both located at 16 The Oaks, Clews Road, Redditch Worcestershire B98 7ST, United Kingdom. Mandaco does business under Surgicraft's name, is staffed by former Surgicraft employees, and is carrying on Surgicraft's former manufacturing and product development business. A true and accurate copy of an explanatory letter from Andrew Hull to a Surgicraft employee, dated "July 2008," is appended hereto as Exhibit 4A.

30. From Centinel's inception, John Viscogliosi has served as Chairman and Chief Executive Officer of Centinel.

31. By letter dated August 20, 2008 to Paradigm BioDevices, John Viscogliosi referenced the Distribution Agreement and notified Paradigm BioDevices that Centinel, which he identified as successor to Raymedica, had acquired the entire issued share of capital of

Surgicraft Group Holdings Limited, which directly owned Surgicraft. The letter instructed that Paradigm BioDevices should "continue to process all future purchase orders through Centinel Spine's wholly owned subsidiary Surgicraft Limited"; to "continue to issue all purchase orders to Surgicraft Limited"; to e-mail the Surgicraft orders to a Centinel address in Minnesota; and to make all current and future payments to an account in the name of Raymedica. A true and accurate copy of John Viscogliosi's August 20, 2008 letter is appended hereto as Exhibit 5. Paradigm BioDevices continued to place orders to Surgicraft, but refused to send orders to Centinel or to make future payments to Raymedica. Paradigm BioDevices continued to send orders and make payment to Surgicraft.

32. The payments that Paradigm BioDevices continued to make to Surgicraft were transferred to Mandaco, being custodian of the Surgicraft bank account. In turn, Mandaco was under instructions from Centinel, Anthony Viscogliosi, and John Viscogliosi to transfer to Centinel payments as they were being received from Paradigm. (See Andrew Hull memo dated October 8, 2008 to Anthony Viscogliosi, copied to John Viscogliosi, at enumerated at ¶ 8 on Page 00007883; and Andrew Hull undated memo (but known to be October 24, 2008) to John Viscogliosi, copied to Anthony Viscogliosi, at enumerated point 1 on Page 00006968, appended hereto as Exhibit 5A and 5B, respectively).

33. No consideration was paid by Centinel to Surgicraft for this transfer of revenues/accounts receivable to or for the benefit of Raymedica/Centinel.

34. In October 2008, Surgicraft terminated the Distribution Agreement, effective December 15, 2008.

35. The termination of the Distribution Agreement by Viscogliosi Brothers and Centinel entitled Paradigm BioDevices to the Change of Control Payment. Surgicraft has not made that payment.

36. By letter dated December 10, 2008 to Paradigm BioDevices, John Viscogliosi instructed Paradigm BioDevices to "return all consignment stock of Surgicraft in your possession" to Centinel. During December 2008, representatives of Surgicraft and Centinel arrived at Paradigm BioDevices' warehouse in Massachusetts and took possession of the Surgicraft inventory on behalf of Centinel. A true and accurate copy of John Viscogliosi's December 10, 2008 letter is appended hereto as Exhibit 6.

37. The Surgicraft inventory that was transferred directly from Paradigm BioDevices' warehouse to Centinel had a value of approximately $24,000,000. See October 6, 2008 memo from Paul Olson to Michael O'Neill, copying Anthony Viscogliosi and John Viscogliosi, appended hereto as Exhibit 6A.

38. The Surgicraft inventory that was transferred directly from Paradigm BioDevices' warehouse to Centinel did not represent all of Surgicraft's STALIF TT inventory that Paradigm BioDevices had the right to distribute under the Distribution Agreement. Indeed, Centinel already had taken possession of some of that STALIF TT inventory.

39. No consideration was paid by Centinel to Surgicraft for these transfers.

40. Since December 2008, Centinel began to distribute, and continues to distribute, Surgicraft's STALIF TT products to Paradigm BioDevices' former customers. Indeed, Centinel replaced Surgicraft, whose structure ceased to exist. A true and accurate copy of a document from "The Management Team" of Surgicraft dated July 10, 2008 and entitled "Announcement Regarding Re-Structure of the Company" is appended hereto as Exhibit 6B.

41. By the time Viscogliosi Brothers, through Centinel, took control of Surgicraft in August 2008, they had completely supplanted their will for that of Surgicraft's management.

42. On or about October 22, 2008, Andrew Hull e-mailed a memorandum to Anthony Fennell, another Surgicraft Director, also addressed to Anthony Viscogliosi, John Viscogliosi and Mark Viscogliosi which expresses and demonstrates how Surgicraft surrendered to the instructions of Viscogliosi Brothers prior to Centinel's acquisition. A true and accurate copy of Andrew Hull's memorandum is appended hereto as Exhibit 7.

43. John Viscogliosi and Anthony Viscogliosi were appointed as Directors of Surgicraft Group Holdings Limited on or about August 15, 2008, and they were appointed as Directors of Surgicraft no later than November 20, 2008. John Viscogliosi has held himself out as Chairman and CEO of both Surgicraft and Centinel.

44. Surgicraft was rendered functionally insolvent by the actions of the Defendants in causing Centinel to take over Surgicraft's inventories and revenue stream.

45. In 2007, Surgicraft had a positive amount in its shareholders' funds of £1,379,196. In 2008, the amount in Surgicraft's shareholders' funds decreased to a deficiency of £23,161. In 2009, Surgicraft's deficiency had grown to £10,797,681. Surgicraft had no revenues in 2010, after revenues of approximately £4,583,337 in 2007 before the looting of Surgicraft was undertaken. Indeed, by January 2011, John Viscogliosi, in his capacity as Director of Surgicraft, acknowledged that Surgicraft "is no longer a going concern." True and accurate copies of Surgicraft's abbreviated accounts for the years 2007, 2008, and 2009 are appended hereto as Exhibit 8.

### The U.K. Litigation

46. In 2008, while the parties disputed Paradigm BioDevices' entitlement to the Change of Control Payment, the Defendants, through Surgicraft, won the "race to the courthouse" and sought a declaration in the High Court of Justice Chancery Division in the United Kingdom that a Change of Control had taken place and that Paradigm BioDevices was not entitled to the Change of Control Payment (the "U.K. Litigation").

47. Paradigm BioDevices filed counterclaims against Surgicraft in the U.K. Litigation, seeking payment of the Change of Control Payment.

48. The High Court in the U.K. Litigation was asked to determine the parties' intent vis-a-vis the Change of Control Payment. In contrast to its past representations, Surgicraft claimed that although the parties initially intended for Paradigm BioDevices to be compensated if the Distribution Agreement were terminated at any time upon a change of control of Surgicraft (which was to be conditional based upon time and Paradigm BioDevices' sales), Paradigm BioDevices gave up that right in consideration for a guaranteed amount if the Distribution Agreement was terminated upon a change of control that occurred only during the first year of the Distribution Agreement.

49. After a full trial, the High Court in the U.K. Litigation ruled that the evidence demonstrated that at the time of the formation of the Distribution Agreement, Surgicraft intended that Paradigm BioDevices would receive the greater of either the guaranteed amount or the conditional Change of Control Payment, and that portions of Surgicraft's purported evidence that the guaranteed amount *was* in lieu of the conditional amount was "fanciful where it is not untruthful." See Approved Judgment dated May 26, 2010, in *Surgicraft Ltd. v. Paradigm*

*BioDevices, Inc.,* High Court of Justice Chancery Division (Christopher Pymont QC), Claim No. HC08CO2874, a true and accurate copy of which is appended hereto as Exhibit 9, at 57(f).

50.     On July 29, 2010, the High Court in the U.K. Litigation entered an interim judgment in favor of Paradigm BioDevices against Surgicraft in the amount of $10 million. See Judgment dated July 29, 2010 in *Surgicraft Ltd. v. Paradigm BioDevices, Inc.,* High Court of Justice Chancery Division (Christopher Pymont QC), Claim No. HC08CO2874, a true and accurate copy of which is appended hereto as Exhibit 10.

51.     On or about August 13, 2010, Surgicraft defaulted on the interim judgment of the U.K. Court.

52.     On November 1, 2010, further proceedings were conducted in the U.K. Litigation to determine the exact amount of Paradigm BioDevices' damages. On November 18, 2010, judgment was entered in the U.K. Litigation in favor of Paradigm BioDevices against Surgicraft in the amount of $15,189,785.67. See Judgment dated November 18, 2010 in *Surgicraft Ltd. v. Paradigm BioDevices, Inc.,* High Court of Justice Chancery Division (Christopher Pymont QC), Claim No. HC08CO2874, a true and accurate copy of which is appended hereto as Exhibit 11.

53.     On November 29, 2010, a final sealed order entered in the amount of $15,189,785.67 in the U.K. Litigation. See Order sealed on November 29, 2010 in *Surgicraft Ltd. v. Paradigm* BioDevices, *Inc.,* High Court of Justice Chancery Division (Christopher Pymont QC), Claim No. HC08CO2874, a true and accurate copy of which is appended hereto as Exhibit 12.

### The Massachusetts Litigation

54.     On March 11, 2010, Surgicraft filed a Complaint in the Superior Court Department of the Trial Court, Commonwealth of Massachusetts (Plymouth County), in

*Surgicraft Ltd. v. Paradigm BioDevices, Inc.*, C.A. No. PLCV2010-0314 (the "Massachusetts Litigation").

55. Pursuant to a court order in the Massachusetts Litigation dated October 28, 2010, escrowed funds in the amount of $745,152.75 were distributed to Paradigm BioDevices.

56. On December 13, 2010, Paradigm BioDevices filed an Answer and Counterclaim in the Massachusetts Litigation, seeking to domesticate and enforce the $15,189,785.67 judgment in its favor in the U.K. Litigation.

57. On March 7, 2011, a default judgment was entered against Surgicraft in the Massachusetts Litigation, in the amount of $14,444,632.92, plus interest from December 13, 2010 in the amount of $398,909.28, for a total judgment of $14,843,542.20. A true and accurate copy of the default judgment in the Massachusetts Litigation is appended hereto as Exhibit 13.

## Continued "Looting" of Surgicraft

58. After "gutting" Surgicraft of its manufacturing rights and assets in the August 15, 2008 transaction, Defendants "looted" the remainder of the Surgicraft assets in October 2008 by diverting its revenues to or for the benefit of Centinel and December 2008 by having Centinel take possession of its inventory.

59. On March 26, 2010, John Viscogliosi, as Director of Surgicraft, executed assignments to Centinel of Surgicraft's intellectual property including its federally-registered trademarks and trademark applications and U.S. Patent Application No. 11/938,476, the only one listed in the Schedule 1 of the Manufacturing Agreement covering "Stalif C." Notwithstanding boilerplate recital of "good and valuable consideration," no fair consideration or exchange of value was provided to Surgicraft by Centinel for these transfers of Surgicraft's valuable assets.

## COUNT I: Fraudulent Transfer

60. Paradigm BioDevices re-alleges and incorporates herein the allegations in paragraphs 1 through 59 above.

61. Defendant Centinel, by its concerted misrepresentation to Paradigm BioDevices and others that Centinel had taken over the entire business of Surgicraft, caused Surgicraft to transfer to or for the benefit of Centinel substantially all of its accounts receivable and inventory for United States sale, knowingly causing Surgicraft to be insolvent and unable to pay creditors, including the Change of Control Payment. Surgicraft did not receive fair or reasonably equivalent value in exchange for these transfers of its assets — in fact, it received none.

62. At least some of the transferred assets -- by way of proceeds from the accounts receivable and the inventory -- inured to the benefit of defendant John Viscogliosi through Centinel and was received by him in full knowledge of the transfers in circumvention of Surgicraft's debt.

63. On the eve of the U.K. court's decision in 2010, Surgicraft, by John Viscogliosi, transferred to Centinel all of Surgicraft's intellectual property, including trademarks, trademark applications and the patent application for STALIF C. Surgicraft did not receive fair or reasonably equivalent value in exchange for these transfers of its assets — in fact, it received none.

64. The transfer of Surgicraft's assets rendered Surgicraft insolvent and was thus fraudulent without actual intent as to all its creditors, including Paradigm BioDevices.

65. The transfer of Surgicraft's assets left Surgicraft with an unreasonably small amount of capital with which to conduct business and meet its obligations and was thus fraudulent without actual intent as to existing and future creditors, including Paradigm BioDevices.

66. The transfer of Surgicraft's assets was made with actual intent to hinder, delay or defraud either present or future creditors and was thus as to existing and future creditors, including Paradigm BioDevices.

67. The foregoing transfers of Surgicraft's assets should be voided or otherwise recovered as necessary to satisfy Paradigm BioDevices' judgment in the U.K. Litigation and the Massachusetts Action.

### COUNT II: Violation of Mass. Gen. L. c. 93A

68. Paradigm BioDevices re-alleges and incorporates herein the allegations in paragraphs 1 through 67 above.

69. Paradigm BioDevices and defendants Centinel and John Viscogliosi are engaged in the conduct of trade and commerce. Centinel is engaged in the conduct of trade and commerce as a competitor that sought to displace and displaced by its conduct Paradigm BioDevices as a distributor of Surgicraft products. John Viscogliosi is engaged in the conduct of trade and commerce as an investor and active manager in the Viscogliosi Bros. entities, including as Director, Chairman and Chief Operating Officer of Surgicraft and of Centinel, in addition to acting on his own account. He has acted in all of these capacities in commerce with Paradigm BioDevices in purportedly negotiating for the acquisition of Paradigm BioDevices and in directing Paradigm BioDevices to transfer to Centinel Surgicraft's U.S. accounts receivables and inventory.

70. Defendants Centinel and John Viscogliosi, separately and in concert, have engaged in unfair, deceptive, and unlawful acts and unfair methods of competition in violation of M.G.L. c. 93A by, *inter alia,* by causing Surgicraft to transfer its assets to Centinel and/or other

entities owned and/or controlled by the Defendants with the intent to hinder, delay, or defraud Paradigm BioDevices.

71.     The actions of these Defendants were knowingly and willfully committed.

72.     Paradigm BioDevices has been and continues to be damaged by the Defendants' willful and knowing malfeasance and is entitled to an award of actual damages, multiple damages, and attorney's fees.

## DEMAND FOR RELIEF

WHEREFORE, Paradigm BioDevices respectfully requests that this Court:

1.     Enter judgment in favor of Paradigm BioDevices against the defendant Centinel, pursuant to Count I in the amount of all damages sustained by Paradigm BioDevices, together with interest, costs, and attorney's fees.

2.     Enter judgment in favor of Paradigm BioDevices against Centinel and John Viscogliosi pursuant to Count II for violation of M.G.L. c. 93A, § 2 and award treble, but no less than double, the amount of Paradigm BioDevices' damages for a willful, knowing, and bad faith violation of said statute.

Grant such other relief as may be deemed just and appropriate.

## JURY TRIAL DEMAND

Paradigm BioDevices demands a trial by jury on all issues so triable.

SAUL EWING LLP

By: _____
Michael S. Gugig, Esquire
1 Riverfront Plaza, Suite 1520
Newark, New Jersey 07102
Tel.: (973) 286-6700
Fax: (973) 286-6817

                                                  Peter Brooks, Esquire
(*Pro Hac Vice* motion to be filed)
131 Dartmouth Street, Suite 501
Boston, MA 02116
Tel: (617) 912-0915
Fax: (857) 400-3770

Dated: May 9, 2012
1385639.6