UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
PARADIGM BIODEVICES, INC.                           :
                                                    :
                        Plaintiff,                  :
                                                    :
            -v-                                     :
                                                    :
CENTINEL SPINE, INC.                                :
and JOHN J. VISCOGLIOSI,                            :
                                                    :
                        Defendants.                 :
-------------------------------------------------------------------X

```
┌────────────────────────────────────┐
│ USDC SDNY                           │
│ DOCUMENT                            │
│ ELECTRONICALLY FILED                │
│ DOC #:_____              │
│ DATE FILED:  May 01, 2013           │
└────────────────────────────────────┘
```

11 Civ. 3489 (JMF)

MEMORANDUM OPINION
AND ORDER

        Plaintiff Paradigm BioDevices, Inc. ("Paradigm"), a Massachusetts corporation, entered

into an exclusive distribution agreement with Surgicraft, Ltd. ("Surgicraft"), a U.K. manufacturer

of medical devices.  (Proposed Fourth Amended Complaint ("FAC") ¶¶ 1, 8).  The agreement

provided that Surgicraft would provide a payment to Paradigm if Surgicraft were ever acquired

by a company that terminated the agreement.  (Id.  ¶¶ 10-11).  Thereafter, Surgicraft was

acquired by Defendant Centinel Spine, Inc. ("Centinel"), which subsequently terminated the

distribution agreement.  (Id. ¶¶ 27, 42).  The High Court of Justice Chancery Division in the

U.K. held that as a result of this acquisition, Paradigm was entitled to a payment from Surgicraft

and entered judgment on behalf of Paradigm for over fifteen million dollars.  (Id. ¶¶ 60-64).

Paradigm alleges that Centinel rendered Surgicraft insolvent in an effort to avoid having to make

the change-of-control payment.  (Id. ¶ 72).

        Based on these facts, Paradigm, in its Third Amended Complaint — the complaint under

which the case is currently proceeding —  alleged two claims: (1) fraudulent transfer (Third

Amended Complaint (Docket No. 82) ¶¶ 61-67); and (2) unfair, deceptive, and unlawful acts and

unfair methods of competition in violation of Massachusetts General Law c.93A (id. ¶¶ 69-72).

On March 15, 2013, Paradigm moved to amend its complaint a fourth time to (1) pierce the

corporate veil and add Viscogliosi Brothers, LLC ("VB") as a defendant; and (2) add a breach-of-contract claim.  (Mot. Leave File Am. Compl. (Docket No. 133)).  For the reasons explained below, the motion is GRANTED with respect to Paradigm's piercing-the-corporate-veil claim and request to add VB as a defendant and DENIED with respect to its breach-of-contract claim.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 15, "a party may amend its pleading only with the opposing party's written consent or the court's leave.  The court should freely give leave when justice so requires."  Fed. R. Civ. P. 15(a)(2).  Rule 21 provides that "the court may at any time, on just terms, add or drop a party."  Fed. R. Civ. P. 21.  "[T]he showing necessary under Rule 21 is the same as that required under Rule 15(a)."  *Johnson v. Bryson*, 851 F. Supp. 2d 688, 703 (S.D.N.Y. 2012).  "Under both Rules 15 and 21, leave to amend may be denied where the proposed amendment would be futile or where it would result in prejudice to the opposing parties."  *Soroof Trading Dev. Co., Ltd. v. GE Microgen, Inc.*, 283 F.R.D. 142, 147 (S.D.N.Y. 2012).  Because Paradigm moves to amend the complaint after the deadline for doing so provided by the scheduling order (*see* Docket No. 96), Paradigm must also demonstrate "good cause" for the amendment.  Fed. R. Civ. P. 16(b)(4).

Thus, Paradigm's motion to amend the complaint should be granted if: (1) amendment would not be futile; (2) it will not prejudice the opposing parties; and (3) Paradigm has demonstrated "good cause."  Paradigm's proposed amendments adding a piercing-the-corporate-veil claim and VB as a defendant meet this standard; its breach-of-contract claim does not.

## DISCUSSION

### I. Piercing the Corporate Veil

#### A. Futility

"An amendment to a pleading is futile if the proposed claim could not withstand a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6)." *Lucente v. Int'l Bus. Machines Corp.*, 310 F.3d 243, 258 (2d Cir. 2002).  To survive a Rule 12(b)(6) motion, the plaintiff must plead sufficient facts "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). Because Centinel is a Delaware corporation, the parties agree that Delaware law governs whether Paradigm can state a claim for piercing the corporate veil.  (Pl's. Mem. 15; Defs'. Mem. 7 n.2). *See also Soroof*, 283 F.R.D. at 150.

"Delaware courts take the corporate form . . . very seriously," disregarding it "only in the exceptional case." *Case Fin., Inc. v. Alden*, Civ. A. No. 1184-VCP, 2009 WL 2581873, at *4 (Del. Ch. Aug. 21, 2009) (internal quotation marks omitted).  "In an appropriate case, however, the corporate veil may be pierced." *Harco Nat. Ins. Co. v. Green Farms, Inc.*, 15 Del. J. Corp. L. 1030, 1038 (Del. Ch. 1989).  Consideration of whether to pierce the corporate veil is "a fact intensive inquiry." *Case Fin., Inc.*, 2009 WL 2581873, at *4.  Delaware courts consider several factors, "none of which [is] dominant." *Id.*  In particular, courts examine whether: (1) the company was adequately capitalized; (2) whether it was solvent; (3) whether corporate formalities, such as recordkeeping, the payment of dividends, and the proper functioning of officers and directors, were observed; (4) whether corporate funds were siphoned or

3

intermingled; and (5) whether, in general, the company functioned as a facade for the controlling shareholder.  *See, e.g.*, *id.*; *MicroStrategy Inc. v. Acacia Research Corp.*, Civ. A. No. 5735-VCP, 2010 WL 5550455, at *11 (Del. Ch. Dec. 30, 2010); *Mason v. Network of Wilmington, Inc.,* Civ.A. No. 19434-NC, 2005 WL 1653954, at *3 (Del. Ch. Ct. July 1, 2005).  Even if there are sufficient indicia that the corporations at issue "actually functioned as a single entity," *Soroof*, 283 F.R.D. at 148 (internal quotation marks omitted), piercing the corporate veil "may be done only in the interest of justice, when such matters as fraud, contravention of law or contract, public wrong, or where equitable consideration among members of the corporation require it, are involved," *Pauley Petroleum, Inc. v. Cont'l Oil Co.*, 43 Del. Ch. 516, 521 (1968).

Under this framework, Paradigm's allegations are sufficient to survive a motion to dismiss.  Paradigm alleges that Centinel "was grossly undercapitalized, insolvent and in financial distress."  (FAC ¶ 34).  Centinel, Paradigm alleges, not only owed millions of dollars in debt at its inception (*id.* ¶ 89) — including eight million dollars owed on financing it obtained in 2008 and 2009 (*id.* ¶ 54) and fifteen million dollars owed to Surgicraft shareholders (*id.* ¶ 34)[1] — but it also merged with Raymedica, which "was losing $500,000 to $600,000 a month" (*id.* ¶ 34).  Nevertheless, Centinel "did not have any working capital or an equity line to support operations" (*id.*), nor did it "have any systems in place to sell product or account for inventory" (*id.* ¶ 35).

Paradigm also contends that Centinel failed to observe corporate formalities, alleging, for example, that "[n]o financial reports have ever been supplied to Centinel's shareholders" (*id.*

---

[1]     There are conflicting allegations about the debt owed to Surgicraft shareholders.  In Paragraph 34 of the FAC, Paradigm alleges that "Centinel immediately had a $15 million debt to the Surgicraft shareholders under the purchase notes executed in connection with the acquisition."  In Paragraph 54, however, Paradigm alleges that "Centinel . . . has never paid any portion of the $20 million it owes to the Surgicraft shareholders in connection with the acquisition."  The discrepancy can perhaps be accounted for through the accumulation of interest, but in any case the difference is not relevant to the analysis here.

¶¶ 56, 90) and that "Centinel has not had any directors' meetings," let alone taken any "minutes of any directors' meetings" (*id.* ¶ 56). In addition, Paradigm alleges other facts that, if true, suggest that VB "exercises complete dominion and control over" Centinel. *Soroof*, 283 F.R.D. at 148 (internal quotation marks omitted). For example, Paradigm alleges that John Viscogliosi, a principal and member of VB, serves as the "Chairman and Chief Executive Officer of Centinel" (*id.* ¶ 33); that Centinel's board of directors is comprised of only two people, the Viscogliosi brothers (*id.* ¶ 56); that "Centinel has been staffed with various employees of VB and its affiliates" (*id.*); and that "Centinel shares office space with VB" (*id.*).

Furthermore, the FAC alleges not only that VB and Centinel intermingled funds, but also that Centinel siphoned funds to VB. Paradigm alleges that "VB has supplied a significant amount of Centinel's financing" (*id.* ¶ 56); that "VB and its affiliates have transferred substantial sums of money to and from Centinel without any documentation or formal approval process" (*id.*); and that Centinel has paid VB and its affiliates "[o]ver $2 million . . . while other, more substantial creditors . . . have not been paid anything" (*id.* ¶ 91).

Taken together, these allegations satisfy the requirement that Paradigm allege with particularity facts "sufficient to show that [Centinel and VB] actually functioned as a single entity and should be treated as such." *Soroof*, 283 F.R.D. at 148 (internal quotation marks and alteration omitted); *see id.* at 150-51 (finding an amended complaint with similar allegations would survive a motion to dismiss).

Paradigm has also sufficiently alleged "fraud or inequity" in Centinel's "use of the corporate form." *Id.* at 151 (internal quotation marks omitted). Paradigm contends, essentially, that Centinel's sole purpose was to allow VB to acquire and distribute the medical products manufactured by Surgicraft, without having to pay Paradigm the Change of Control Payment to

which it was entitled; and that VB then siphoned funds from Centinel, leaving it insolvent. These allegations indicate "not only that [VB and Centinel were] operating as a unified economic entity, but also that the corporate form ha[d] been erected for a fraudulent purpose." *Soroof*, 283 F.R.D. at 152 (internal quotation marks omitted) (final alteration in original); *see also Mason v. Network of Wilmington, Inc*., 2005 WL 1653954, at *3 (Del. Ch. 2005) (explaining that "insolvency is one factor to be considered in assessing whether the corporation engaged in conduct that unjustly shields its assets from its creditors" and that "especially if particular shareholders benefited from and controlled that conduct, then justice would require the piercing of the corporate veil").

Defendants contest the accuracy of several of the factual allegations supporting Paradigm's veil-piercing claim.  At this stage, however, the Court must treat the allegations set forth in the Complaint as true.  *See, e.g.*, *Iqbal*, 556 U.S. at 678. Accordingly, the factual disputes are irrelevant to the determination of whether the proposed amendment is futile — that is, whether it would survive a motion to dismiss.  Paradigm's veil-piercing claim would survive such a motion.

### B. Prejudice

Even if amendment would not be futile, it nevertheless should not be permitted "where it would result in prejudice to the opposing parties." *Soroof*, 283 F.R.D. at 147.  Neither party, however, has identified any prejudice that would result from permitting Paradigm to amend the complaint to add VB as a defendant.  Although Defendants state generally that Paradigm's proposed amendments "would require new discovery" (Defs'. Mem. 11), the only new discovery Defendants contend would be required relates to Paradigm's proposed breach-of-contract claim (*id.* at 11-13).  Defendants identify no new discovery that would be required if the complaint

were amended to add VB as a defendant, nor any other form of prejudice that would result from permitting such an amendment.

### C. Good Cause

Finally, Paradigm has demonstrated "good cause" to amend the complaint by adding VB as a defendant. "Good cause is demonstrated by a showing that despite its having exercised diligence, the applicable deadline could not have been reasonably met." *Soroof*, 283 F.R.D. at 147 (internal quotation marks omitted). Paradigm's initial complaint had included a veil-piercing claim. The Honorable Richard J. Holwell — to whom this case was originally assigned — dismissed the claim, holding that it was "conclusory," but gave Paradigm leave to amend. (Conf. Tr., Nov. 9, 2011 (Docket No. 56) at 57). Paradigm did not discover facts sufficient to state a claim for piercing the corporate veil until the end of discovery. Specifically, the allegations supporting Paradigm's veil-piercing claim rely on evidence Paradigm obtained from Centinel's financial statements, produced on February 22, 2013 (Berk Decl. ¶ 18), and depositions taken in January and February 2013 (Brooks Decl. ¶ 2). Paradigm informed Defendants and VB on January 30, 2013 (Berk Decl. ¶ 19), and this Court on February 1, 2013 (Conf. Tr., Feb. 1, 2013 (Docket No. 131) at 5), that it might seek to amend the complaint to add VB as a Defendant. It then moved for leave to do so on March 15, 2013 (Docket No. 133), approximately one month after the final deposition upon which its veil-piercing allegations rely. This timeline is sufficient to establish that Paradigm acted diligently in pursuing its veil-piercing claim. *See, e.g.*, *Enzymotec Ltd. v. NBTY, Inc.*, 754 F. Supp. 2d 527, 537 (E.D.N.Y. 2010) ("[F]iling a motion to amend within two months of acquiring the information is sufficient to show diligence."); *Permatex, Inc. v. Loctite Corp.*, No. 03 Civ. 943, 2004 WL 1354253, at *3

(S.D.N.Y. June 17, 2004) (permitting amendment when motion to amend was filed less than two months after discovery of new evidence).

## II.      Breach of Contract

The same cannot be said of Paradigm with respect to its breach-of-contract claim.  That claim is based on the Contribution and Exchange Agreement between Surgicraft and Centinel.  (*See* FAC ¶¶ 80-85; Pl.'s Mem. 18-21).   Defendants  assert — and Paradigm does not dispute — that Paradigm has had a copy of this Agreement since at least the beginning of discovery, which commenced no later than December 2011 (Berk Decl. ¶ 2), and that Paradigm itself produced the Agreement in discovery.  (Defs. Mem. 14).  Although the recent depositions "may further have underscored the potential viability" of Paradigm's breach-of-contract claim, *Oppenheimer & Co. Inc. v. Metal Mgmt., Inc.*, No. 08 Civ. 3697, 2009 WL 2432729 (S.D.N.Y. July 31, 2009), the gravamen of the claim is that the text of the Agreement itself indicates that Paradigm was an intended third-party beneficiary.   Paradigm has had the Agreement — and thus the information necessary to allege a breach-of-contract claim — since at least December 2011.  Paradigm filed its Second Amended Complaint on March 12, 2012 (Docket No. 63), and its Third Amended Complaint on May 9, 2012 (Docket No. 82).   It has failed to provide any reason why it could not have included a breach-of-contract claim in these complaints.  It may not do so now.  *See, e.g.*, *Rent-A-Ctr., Inc. v. 47 Mamaroneck Ave. Corp.*, 215 F.R.D. 100, 104 (S.D.N.Y. 2003) (denying defendants leave to amend answer where the motion to amend was filed four months after the deadline in the scheduling order and "the substance of the defendants' 'new' claim was known when the defendants filed their original amended answer and added their counterclaim"); *see also Grochowski v. Phoenix Const.*, 318 F.3d 80, 86 (2d Cir. 2003) (affirming denial of leave to amend where plaintiffs "delayed more than one year before seeking to amend their complaint");

*Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 340-41 (2d Cir. 2000) (affirming denial of leave to amend to add breach-of-contract claim where plaintiff had document on which claim was based before he filed suit).

## CONCLUSION

For these reasons, Paradigm's motion for leave to amend its complaint is GRANTED with respect to its veil-piercing claim and the addition of VB as a defendant and DENIED with respect to its breach-of-contract claim.

SO ORDERED.

Dated: May 1, 2013
New York, New York

_____
JESSE M. FURMAN
United States District Judge