```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
PARADIGM BIODEVICES, INC.                            :
                                                     :
                        Plaintiff,                   :
                                                     :           11 Civ. 3489 (JMF)
              -v-                                    :
                                                     :           MEMORANDUM OPINION
CENTINEL SPINE, INC. ET AL.,                         :               AND ORDER
                                                     :
                        Defendants.                  :
------------------------------------------------------------------X
```

JESSE M. FURMAN, United States District Judge:

Plaintiff Paradigm BioDevices, Inc. ("Paradigm") entered into an exclusive distribution agreement with Surgicraft Limited of the United Kingdom ("Surgicraft"), a manufacturer of medical devices. (Fourth Amended Complaint ("FAC") ¶¶ 1, 8). As part of that agreement, Surgicraft agreed to provide a payment to Paradigm if Surgicraft were ever acquired by a company that terminated the agreement. (*Id.* ¶¶ 10-11). Thereafter, Surgicraft was acquired by Defendant Centinel Spine, Inc. ("Centinel"), and Surgicraft subsequently terminated the distribution agreement. (*Id.* ¶¶ 27, 42). As a result of this termination, the United Kingdom High Court of Justice Chancery Division held that Paradigm was entitled to a payment from Surgicraft and entered judgment on behalf of Paradigm. (*Id.* ¶¶ 60-64). That judgment was later domesticated by a Massachusetts court, which entered a default judgment against Surgicraft for over fourteen million dollars. (*Id.* ¶ 68). To the extent relevant here, Paradigm alleges in this suit that, in order to avoid paying the Massachusetts judgment, Surgicraft fraudulently transferred "substantially all of its accounts receivable and inventory for United States sale" as well as "all of [its] intellectual property" to Centinel. (*Id.* ¶¶ 72, 74). In addition, Paradigm

alleges that all Defendants "engaged in unfair, deceptive, and unlawful acts and unfair methods of competition in violation of" Massachusetts General Law chapter 93A.  (*Id.* ¶ 91).

On April 3, 2013, Paradigm filed a motion for a preliminary injunction pursuant to Rule 65 of the Federal Rules of Civil Procedure (Docket No. 147), seeking an order directing Centinel "not to transfer, withdraw, assign, alienate, sell, pledge, encumber, conceal, hypothecate, or dispose of any of its assets (1) to any of Centinel Spine, Inc.'s officers, directors, or shareholders, or their affiliates, and (2) other than in the regular course of Centinel Spine, Inc.'s business, pending the resolution of this case."  (Proposed Order Mot. Prelim. Inj., Docket No. 148). Notably, although Defendants oppose Paradigm's motion, they do not dispute that Paradigm is likely to succeed on the merits of its claims.  Instead, they argue that (1) the Court lacks authority to grant the relief Paradigm seeks in light of the Supreme Court's decision in *Grupo Mexicano de Desarrollo S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308 (1999) ("*Grupo Mexicano*"); and (2) Paradigm has failed to show that it risks irreparable harm in the absence of a preliminary injunction because Paradigm has failed to demonstrate that Centinel is insolvent or at risk of becoming so and because Centinel has not been making preferential payments to its shareholders, officers, and directors over other creditors.  The Court scheduled a conference in the matter for May 13, 2013, to discuss whether, and to what extent, a hearing is required.  To facilitate that discussion, this Memorandum Opinion addresses Defendants' arguments concerning *Grupo Mexicano*.

## DISCUSSION

### A.  *Grupo Mexicano*

*Grupo Mexicano* involved a group of investment funds that purchased unsecured notes from Grupo Mexicano de Desarrollo, S.A., a Mexican holding company.  *See Grupo Mexicano*,

2

527 U.S. at 310.  When the company defaulted on the notes, the investors filed suit in federal district court for breach of contract, seeking damages of over eighty million dollars.  *See id.* at 312.  Worried that the company was dissipating its assets and preferring its Mexican creditors over other investors, the investors also sought a preliminary injunction preventing the company from transferring its most valuable asset, notes guaranteed by the Mexican government.  *See id.* at 311-12.  The district court granted the injunction and the Second Circuit affirmed, *see id.* at 312-13, but the Supreme Court reversed, *see id.* at 333.  The Court held that Rule 65 does not empower a district court to enter a preliminary injunction freezing assets pending the adjudication of an action brought solely at law, where the plaintiff claims "no lien or equitable interest" in the assets at issue.  *Id.* at 310, 333.[1]  In so holding, the Court the case from *Deckert v. Independence Shares Corp.*, 311 U.S. 282 (1940), an action "*for equitable relief,*" in which the Court had permitted a preliminary injunction "to preserve the status quo pending final determination."  *Grupo Mexicano*, 527 U.S. at 325 (emphasis added and internal quotation marks omitted).  "The preliminary relief available in a suit seeking equitable relief," the Court explained, "has nothing to do with the preliminary relief available in a creditor's bill seeking equitable assistance in the collection of a legal debt."  *Id.*

*Grupo Mexicano* thus stands for the proposition that "where a plaintiff creditor has no lien or equitable interest in the assets of a defendant debtor, the creditor may not interfere with the debtor's use of his property before obtaining judgment."  *United States ex rel. Rahman v.*

---

[1] Although this is a diversity case, Paradigm seeks a preliminary injunction pursuant to Rule 65 of the Federal Rules of Civil Procedure.  Like the respondents in *Grupo Mexicano*, Paradigm has not argued that the availability of an injunction should be determined by the law of the forum state.  *See Grupo Mexicano*, 527 U.S. at 318 n.3 (citing *Erie R.R. Co. v. Tompkins,* 304 U.S. 64 (1938)).  Therefore, like the Supreme Court in that case, this Court declines to consider that argument.  *See id.*  It notes, however, that New York has adopted the rule in *Grupo Mexicano*. *See Credit Agricole Indosuez v. Rossiyskiy Kredit Bank*, 94 N.Y.2d 541 (2000).

*Oncology Assoc.*, 198 F.3d 489, 496 (4th Cir. 1999). By contrast, "when the plaintiff creditor asserts a cognizable claim to specific assets of the defendant or seeks a remedy involving those assets, a court may in the interim invoke equity to preserve the *status quo* pending judgment." *Id.*; accord *Kennedy Bldg. Assocs. v. CBS Corp.*, 476 F.3d 530, 535 (8th Cir. 2007); *Animale Grp., Inc. v. Sunny's Perfume, Inc.*, 256 F. App'x 707, 709 (5th Cir. 2007); *SEC v. ETS Payphones, Inc.*, 408 F.3d 727, 734 (11th Cir. 2005); *Rubin v. Pringle* (*In re Focus Media Inc.*), 387 F.3d 1077, 1085 (9th Cir. 2004); *CSC Holdings, Inc. v. Redisi*, 309 F.3d 988, 996 (7th Cir. 2002); *Quantum Corporate Funding, Ltd. v. Assist You Home Health Care Servs. of Va., L.L.C.*, 144 F. Supp. 2d 241, 249 (S.D.N.Y. 2001). And, as many courts have held, "where plaintiffs seek *both* equitable and legal relief in relation to specific funds, a court retains its equitable power to freeze assets." *Quantum Corporate Funding*, 144 F. Supp. 2d at 250 n.9 (emphases omitted and added); accord *Rahman*, 198 F.3d at 498; *ETS Payphones*, 408 F.3d at 734; *DLJ Mortg. Capital, Inc. v. Kontogiannis*, 594 F. Supp. 2d 308, 329 n.13 (E.D.N.Y. 2009); *Wishnatzki & Nathel, Inc. v. H.P. Island-Wide, Inc.*, No. 00 Civ. 8051 (JSM), 2000 WL 1610790, at *1 (S.D.N.Y. Oct. 27, 2000).

Applying these principles here, the Court has the authority to grant a preliminary injunction to Paradigm. Paradigm alleges not only a legal claim for money damages, but also an equitable claim: that Surgicraft fraudulently transferred assets to Centinel. (FAC ¶¶ 71-78). As a remedy for that claim, Paradigm requests that the "transfers of Surgicraft's assets . . . be voided or otherwise recovered as necessary to satisfy" Paradigm's judgment. (*Id.* ¶ 78). In other words, Paradigm asserts an equitable interest in the property it alleges Surgicraft fraudulently transferred to Centinel. *See AngioDynamics, Inc. v. Biolitec AG*, 711 F.3d 248, 250 (1st Cir. 2013) ("[W]here a creditor has a judgment against a debtor and can make a colorable claim that the

debtor's funds have been fraudulently conveyed to other entities, the creditors do have a claimed lien interest to support a preliminary injunction freezing assets transferred to the other entities." (internal quotation marks and alteration omitted)). And, as a remedy, Paradigm seeks rescission, which sounds in equity. *See Grupo Mexicano*, 527 U.S. at 319, 325; *Deckert*, 311 U.S. at 288-89; *Rahman*, 198 F.3d at 498. Under *Grupo Mexicano*, then, this Court has the authority to enter a preliminary injunction freezing those assets Paradigm alleges were fraudulently conveyed. *See, e.g.*, *In re Focus Media*, 387 F.3d at 1085 ("*Grupo Mexicano* . . . exempts from its proscription against preliminary injunctions freezing assets cases involving . . . fraudulent conveyances."); *accord Rahman*, 198 F.3d at 498; *Ally Bank v. Reimer*, No. CV 09-2795 (ADS) (WDW), 2010 WL 446025, at *4 (E.D.N.Y. Jan. 29, 2010); *Trafalgar Power, Inc. v. Aetna Life Ins. Co.*, 131 F. Supp. 2d 341, 350 (N.D.N.Y 2001).

Citing *JSC Foreign Economic Association Technostroyexport v. International Development and Trade Services, Inc.*, 295 F. Supp. 2d 366 (S.D.N.Y. 2003) ("*JSC*"), Defendants argue that "[w]hen a plaintiff seeks to establish liability against a third party for a money judgment already obtained, the request for an injunction should be denied." (Defs.' Opp'n 4). *JSC*, however, does not stand for that broad proposition. In *JSC*, the plaintiff creditor sought a preliminary injunction freezing the assets of the defendants, who were alleged to be alter egos of the judgment debtor and to have fraudulently conveyed property to a third party. *See JSC*, 295 F. Supp. 2d at 373-74, 387. Relying on Second Circuit precedent, the Court concluded that the alter ego action was an action for money damages, even though it was brought as part of an action to enforce a judgment. *See id.* at 388-89. It followed that *Grupo Mexicano* barred preliminary relief. "The equitable relief that the plaintiff [sought], including the setting aside of alleged fraudulent conveyances," the Court reasoned, "is incidental to, and indeed

contingent upon the success of, the plaintiff's alter ego action," which sounded in law. *Id.* at 389.

Unlike the circumstances in *JSC*, where the conveyance at issue was between defendants and a third party, the conveyances at issue here were between Defendants and the judgment debtor, Surgicraft. That is, Paradigm alleges that Surgicraft, the judgment debtor, fraudulently transferred its assets to Defendant Centinel. That claim does not depend on any finding that Centinel is an alter ego of Surgicraft. Under New York law, where a conveyance is fraudulent as to a creditor, the creditor may, "as against any person except a purchaser for fair consideration without knowledge of the fraud," seek to have the conveyance set aside. N.Y. DEBT. & CRED. L. § 278. Unlike in *JSC*, then, the viability of Paradigm's equitable claim is not contingent on the success of any legal claim. Accordingly, the Court is empowered to grant preliminary injunctive relief in furtherance of Paradigm's equitable claims. *See DLJ Mortg. Capital, Inc.*, 594 F. Supp. 2d at 329 n.13.

**B. The Scope of Any Injunction**

Although *Grupo Mexicano* does not bar preliminary relief altogether, it does not permit the Court to enjoin *all* of Centinel's assets, as Plaintiff requests. (Pl.'s Reply 3). That is because, under *Grupo Mexicano* and *Deckert*, a district court may enjoin the disposition of assets pending judgment only to the extent that an injunction is "'a reasonable measure to preserve the status quo pending final determination'" of an equitable claim. *Grupo Mexicano*, 527 U.S. at 325 (quoting *Deckert*, 311 U.S. at 290). It follows that, to the extent any injunction is warranted, it must be limited to the assets that Paradigm alleges were fraudulently transferred. After all, the ultimate relief Paradigm seeks is that provided under New York law — rescission of the fraudulent transfers, *see* N.Y. DEBT. & CRED. L. § 278 — and its equitable interest extends only

to the assets fraudulently transferred. Thus, the Court has the authority to enter a preliminary injunction, but only insofar as it preserves the assets that were fraudulently transferred. *See, e.g.*, *JSC*, 295 F. Supp. 2d at 389 (explaining that plaintiff must assert a "lien or equitable interest in the assets it seeks to restrain").

In arguing otherwise, Paradigm relies on *CSC Holdings, Inc. v. Redisi*, 309 F.3d 988 (7th Cir. 2002), and *Klipsch Grp., Inc. v. Big Box Store Ltd.*, No. 12 Civ. 6283, 2012 WL 5265727 (S.D.N.Y. Oct. 24, 2012). That reliance is misplaced. In each of those cases, the plaintiff's claim was for an equitable accounting of profits provided by statute. See *CSC Holdings*, 309 F.3d at 996; *Klipsch Group*, 2012 WL 5265727, at *8. That remedy is a "limited exception" to the general rule that "for restitution to lie in equity, the action . . . must seek not to impose personal liability on the defendant, but to restore to the plaintiff *particular* funds or property in the defendant's possession." *Great-W. Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 213 (2002) (emphasis added). In *CSC Holdings* and *Klipsch Group*, therefore, a preliminary injunction restraining the disposition of Defendants' profits was available to preserve this exceptional form of equitable relief. *See CSC Holdings*, 309 F.3d at 996; *Klipsch*, 2012 WL 5265727, at *5. In this case, Paradigm does not request — let alone argue that New York law provides for — an accounting of profits.

In short, because the only equitable remedy Paradigm seeks is rescission of the assets fraudulently transferred to Surgicraft, its equitable interest is limited to those assets, and only those assets may be enjoined. Furthermore, to the extent that these assets have "been dissipated so that no product remains, [Paradigm's] claim is only that of a general creditor," *Great-W. Life & Annuity Ins. Co*, 534 U.S. at 213 (internal quotation marks omitted). Thus, under *Grupo Mexicano*, the Court is without authority to enjoin the disposition of proceeds of the sale of the

7

allegedly fraudulently conveyed assets, if such proceeds have been dissipated in the course of Centinel's business. But any assets that were fraudulently transferred and remain "in the defendant's possession" may be enjoined. *Id.*

## CONCLUSION

For the foregoing reasons, the Court rules that if Paradigm satisfies the traditional preliminary injunction standard, the Court may grant preliminary injunctive relief, but only to the extent that the assets alleged to have been fraudulently conveyed remain in Centinel's possession. In light of this ruling, the parties are ordered to confer with one another in advance of the conference on May 13, 2013, with respect to whether, and to what extent, a hearing on Plaintiff's motion is required.

SO ORDERED.

Dated: May 9, 2013
       New York, New York.

_____
JESSE M. FURMAN
United States District Judge