USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 02/10/2014

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------- X
:
PARADIGM BIODEVICES, INC.,                                          :
:
                    Plaintiff,     :    11 Civ. 3489 (JMF)
:
      -v-                                                          :    MEMORANDUM
:    OPINION AND ORDER
VISCOGLIOSI BROTHERS, LLC et al.,                                   :
:
                    Defendants.    :
:
------------------------------------------------------------------- X

JESSE M. FURMAN, United States District Judge:

      Plaintiff Paradigm BioDevices, Inc. ("Paradigm") brings this action against Viscogliosi Brothers LLC ("VB"), Centinel Spine, Inc. ("Centinel"), and John J. Viscogliosi (together, "Defendants") to recover money damages awarded to Plaintiff in prior proceedings — specifically, a judgment for $14,843,52.20 entered in the High Court of Justice Chancery Division in the United Kingdom and domesticated in Massachusetts Superior Court.[1]  Plaintiff moves, pursuant to Rule 56(a) of the Federal Rules of Civil Procedure, for partial summary judgment as to liability on its fraudulent transfer claim (Pl.'s Mot. Partial Summ. J. (Docket No. 179)), and Defendants move for summary judgment on three of Plaintiff's claims: (1) as to damages for the fraudulent transfer claim; and as to liability (2) on Plaintiff's alter ego claim and (3) Plaintiff's claim pursuant to Massachusetts General Laws Chapter 93A (Defs.' Mot. Summ.

---

[1]  The Court's prior opinions in this case, see *Paradigm BioDevices, Inc. v. Centinel Spine, Inc.*, No. 11 Civ. 3489 (JMF), 2013 WL 1915330, at *4 (S.D.N.Y. May 9, 2013); *Paradigm BioDevices, Inc. v. Centinel Spine, Inc.*, No. 11 Civ. 3489 (JMF), 2013 WL 1830416, at *1 (S.D.N.Y. May 1, 2013); *Paradigm BioDevices, Inc. v. Viscogliosi Bros., LLC*, 842 F. Supp. 2d 661, 668 (S.D.N.Y. 2012), set forth the factual background in some detail.  Familiarity with that factual background and the Court's prior opinions is presumed.

1

J. (Docket No. 180)).  For the reasons stated below, Plaintiff's motion for partial summary judgment is GRANTED, and Defendants' motion for summary judgment is DENIED.

Summary judgment is appropriate where the admissible evidence and the pleadings demonstrate "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  In ruling on a motion for summary judgment, all evidence must be viewed "in the light most favorable to the non-moving party," *Overton v. N.Y. State Div. of Military & Naval Affairs*, 373 F.3d 83, 89 (2d Cir. 2004), and the court must "resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought," *Sec. Ins. Co. of Hartford v. Old Dominion Freight Line, Inc.*, 391 F.3d 77, 83 (2d Cir. 2004).  A dispute over an issue of material fact qualifies as genuine if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  "In moving for summary judgment against a party who will bear the ultimate burden of proof at trial, the movant's burden will be satisfied if he can point to an absence of evidence to support an essential element of the nonmoving party's claim." *Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995); *accord PepsiCo, Inc. v. Coca-Cola Co.*, 315 F.3d 101, 105 (2d Cir. 2002).

Applying those standards here, Plaintiff's motion for summary judgment as to liability on the fraudulent conveyance claim is GRANTED, as the parties have stipulated "that Centinel is liable to Paradigm under New York Debtor and Creditor Law §§ 273 and 273-a."  (Pl.'s Mot. Partial Summ. J. (citing Stipulation and Order (Docket No. 178)); *see* Stipulation and Order 2 (conceding that Centinel "did not pay Surgicraft fair consideration for the Assets as defined by

New York Debtor and Creditor Law" and thus is liable to Paradigm)).  Defendants' motion for summary judgment as to damages, however, is DENIED.

Its first argument — that, with respect to the inventory that remains in Centinel's control, Paradigm's remedies are limited to rescission (Defs.' Mem. Law Supp. Mot. Summ. J. ("Defs.' Mem. Law") (Docket No. 181) 3) — is contrary to *In re Adelphia Recovery Trust*, 634 F.3d 678, 692 (2d Cir. 2011), which held that "New York law permits [a money judgment] when the traditional fraudulent conveyance remedy of rescission is no longer practicable."  New York courts have held, for example, that money judgments are available where assets have been sold and commingled with a transferee's assets, *see Lending Textile, Inc. v. All Purpose Accessories Ltd.*, 174 Misc. 2d 318, 320 (1st Dep't 1997), or when "the grantee has disposed of the wrongfully conveyed property or *depreciated it*," *Marine Midland Bank v. Murkoff*, 508 N.Y.S.2d 17, 24-25 (2d Dep't 1986) (emphasis added).  Such may be the case here, as four years have elapsed since the transfers at issue took place, and Centinel introduced a new version of the inventory at issue in October 2010, rendering that inventory all but obsolete.  (*See* Pl.'s Mem. Law Opp'n Summ. J. ("Pl.'s Mem. Law") (Docket No. 188) 13-14; deBorst Decl. (Docket No. 191) ¶¶ 21-23).  In those circumstances, rescission may well be "no longer practicable," *Adelphia Recovery Trust*, 634 F.3d at 692, and to "no avail," *McGillicuddy v. Laidlaw, Adams & Peck Inc.*, No. 88 Civ. 4928 (LBS), 1995 WL 1081307, at *8 (S.D.N.Y. Aug. 14, 1995).

In addition, there are material disputes of fact with respect to the value of the inventory that Centinel sold, which is to be determined by the "contemporaneous fair market value of each transfer."  *United States v. Mazzeo*, 306 F. Supp. 2d 294, 321 (E.D.N.Y. 2004).  Asserting that the best measure of that value is the amount of money that Paradigm would have paid to Surgicraft under the Distribution Agreement, Defendants argue that Paradigm should be awarded

$1,835,037.22.  (Defs.' Mem. Law 4).  But there is ample evidence in the record to support a conclusion that the fair market value of the inventory was much higher.  For example, VB's own banker testified that the inventory had a value of $24 million; Surgicraft's former head of international sales testified that the inventory was worth $21 million; and Centinel itself listed the book value of the inventory to be about $8 million on its 2008 financial statement.  (*See* Pl.'s Mem. Law 16; *see also* Berk Decl. (Docket No. 190), Ex. M at 107; Berk Decl., Ex. B).  In the same vein, there are material disputes of fact with respect to the amount of consideration paid by Centinel for the assets, which would be deducted from the money owed to Paradigm.  (*See* Pl.'s Mem. Law 16-17).

Defendants' motion for summary judgment with respect to Plaintiff's alter ego claim — namely, that VB and Centinel functioned as a single entity and, as such, Centinel's corporate veil should be pierced in order to hold VB liable for the debts Centinel and Surgicraft owe to Paradigm — is also DENIED.  (Defs.' Mem. Law 7-16; Fourth Am. Compl. (Docket No. 176) ¶ 87).  In evaluating a corporate veil piercing claim under Delaware law (which applies here, *see Paradigm BioDevices, Inc.*, 2013 WL 1830416, at *2), a court must consider

> (1) whether the company . . . was adequately capitalized for the undertaking; (2) whether the company was solvent; (3) whether corporate formalities were observed; (4) whether the controlling shareholder siphoned company funds; and (5) whether, in general, the company simply functioned as a facade for the controlling shareholder.

*Case Fin., Inc. v. Alden*, Civ. No. 1184 (VCP), 2009 WL 2581873, at *4 (Del. Ch. Aug. 21, 2009).  None of those factors individually dominates the inquiry.  *See id.*  In addition, corporate veil piercing claims "require[] an element of fraudulent intent."  *Soroof Trading Dev. Co. v. GE Microgen, Inc.*, 283 F.R.D. 142, 147 (S.D.N.Y. 2012) (quoting *Blair v. Infineon Techs. AG*, 720

F. Supp. 2d 462, 470 (D. Del. 2010)).  A court's alter ego inquiry is a "fact intensive" one.  *Case Fin.*, 2009 WL 2581873, at *4.

In this case, there are material disputes of fact with respect to whether — or to what extent — Centinel observed corporate formalities or simply served as a "facade."  For example, the record is not clear with respect to whether or how often Centinel hosted *regular* and separate board meetings (Viscogliosi Decl. (Docket No. 186) ¶ 2; Viscogliosi Decl., Ex. A), and whether Centinel maintains its own employees (Viscogliosi Decl. ¶ 7; Berk Decl., Ex. E at 104, 124; Berk Decl., Ex. I; Berk Decl., Ex. P at 8-9; Berk Decl., Ex. N at 6, 151-53).  Further, there is evidence from which a fact finder could conclude that the "fact-intensive" inquiry calls for piercing of the corporate veil.  For instance, there is evidence that Centinel was undercapitalized from the beginning because "it did not have any capital or debt financing to support its operations[,] was losing between $500,000 and $600,000 per month," had $15,000,000 in debt and "was unable to pay its bills, employees, rent, or pay Mandaco for product it ordered."  (Pl.'s Mem. Law 19).  Plaintiff also alleges the siphoning of company funds because, "despite its insolvency and significant debts," Centinel "paid VB and its affiliates a total of $2,141,548.20." (*Id.* at 20).  Considering that evidence in the light most favorable to Plaintiff, the Court finds that there are issues of material fact in dispute and DENIES summary judgment on Plaintiff's alter ego claim.

Finally, Defendants seek summary judgment on Plaintiff's claim that Defendants engaged in unfair and deceptive business practices and unfair methods of competition in violation of Massachusetts General Law Chapter 93A.  (Defs.' Mem. Law 16-24; Fourth Am. Compl. ¶ 91).  Defendants contend that (1) the conduct at issue did not place "primarily and substantially" in Massachusetts; and (2) the alleged conduct was not "perpetrated in a business

5

context." (Defs.' Mem. Law 17, 23). The Court discussed those two requirements in its earlier opinion addressing Defendants' motion to dismiss. *See Paradigm BioDevices, Inc.*, 842 F. Supp. 2d at 668-71. As discussed in more detail there, a claim can be brought under Chapter 93A "only if the actionable conduct took place 'primarily and substantially' in Massachusetts," *id.* at 669 (quoting Mass. Gen. Laws ch. 93A, § 11), a determination that is made based on a "fact-intensive 'center of gravity' test" and consideration of (1) where the defendant's deception occurred; (2) where the plaintiff was deceived and acted upon the deception; and (3) where the plaintiff's losses occurred due to the deception. *See id.* (quoting *Clinton Hosp. Ass'n v. Corson Grp., Inc.*, 907 F.2d 1260, 1265-66 (1st Cir. 1990) (internal quotation marks omitted)). The issue is a question of law, and the burden of proof is on the party or parties who claim that the conduct did *not* take place primarily and substantially in Massachusetts — here, Defendants. *See* Mass. Gen. Laws ch. 93A, § 11; *Maltz v. Union Carbide Chems. & Plastics Co.*, 992 F. Supp. 286, 319 (S.D.N.Y. 1998). Separately, Chapter 93A requires that the alleged conduct was "perpetrated in a business context." *Arthur D. Little, Inc. v. E. Cambridge Sav. Bank*, 625 N.E.2d 1383, 1389 (Mass. App. Ct. 1994) (internal quotation marks omitted). That is, the plaintiff and defendant must have acted in trade or commerce with each other. *See, e.g.*, *Milliken & Co. v. Duro Textiles, LLC*, 887 N.E.2d 244, 259-60 (Mass. 2008).

In this case, Defendants have not carried their burden of demonstrating that the claim fails as a matter of law. Defendants' argument on the first point is not insubstantial, but — drawing all inferences in Plaintiff's favor — there is sufficient evidence in the record to support a finding that Defendants committed unfair and deceptive acts primarily and substantially in Massachusetts. Among other things, Defendants' alleged scheme — to avoid the Change of Control Payment and take over Plaintiff's distribution of Surgicraft's products — was designed

to cause harm to Plaintiff, a Massachusetts corporation.  Defendants attended at least one meeting in Massachusetts and sent correspondence to Plaintiff in Massachusetts.  (Berk Decl., Ex. R at 22-24).  And representatives of Defendants traveled to Plaintiff's warehouse in Massachusetts and, after conducting an audit of the inventory there, took it.  (Berk Decl., Ex. H at 2; Berk Decl., Ex. I at 1; deBorst Decl. ¶¶ 5-8).[2]  As for Defendants' second argument, the Court previously held that Plaintiffs' allegations, if true, satisfied the "commercial relationship" requirement of the Massachusetts law.  *See Paradigm BioDevices, Inc.*, 842 F. Supp. 2d at 668.  As there are facts in the record to support those allegations (*see, e.g.*, Berk Decl., Ex. D at 273-75, 280-82; Berk Decl., Ex. E at 171-72; Berk Decl., Ex. F; Berk Decl., Ex. G; Berk Decl., Ex. I at 1; deBorst Decl. ¶ 5), summary judgment cannot be granted on that basis either.

Accordingly, Plaintiff's motion for partial summary judgment as to liability on the fraudulent conveyance claim is GRANTED, and Defendants' motion for summary judgment is DENIED.  The parties shall immediately advise the Court by joint letter if they are interested in a referral to the assigned Magistrate Judge for purposes of settlement.  Regardless, **within thirty days** of this Memorandum Opinion and Order, the parties shall submit to the Court for its approval a Joint Pretrial Order prepared in accordance with Federal Rule of Civil Procedure 26(a)(3) and the Court's Individual Rules and Practices.  The parties should follow Paragraph 5 of the Court's Individual Rules and Practices, which identifies submissions that must be made at or before the time of the Joint Pretrial Order, including any motions *in limine*.  At or before the

---

[2]   Defendants contend that ownership of the inventory was not transferred while it was in Massachusetts.  (Defs.' Mem. Law 20-21).  Putting aside the question of whether that would matter, there is evidence to the contrary.  For example, Centinel listed the inventory as one of its assets in its 2008 financial statement.  (Berk Decl., Ex. B).  Additionally, John Viscogliosi sent correspondence to Plaintiff on behalf of Centinel claiming that "we own" the inventory and directing Plaintiff to place orders and make payments to Centinel for the inventory.  (Berk Decl., Ex. G at 1; *see also* Berk Decl., Ex. C).

same date, the parties shall also file joint requests to charge, joint proposed verdict forms, and joint proposed *voir dire* questions in accordance with the Court's Individual Rules and Practices. Jury instructions may not be submitted after the Joint Pretrial Order due date, unless they meet the standard of Federal Rule of Civil Procedure 51(a)(2)(A). The parties shall be ready for trial approximately two weeks after the Joint Pretrial Order is filed.

The Clerk of Court is directed to terminate Docket Nos. 179 and 180.

SO ORDERED.

Dated: February 10, 2014
       New York, New York

_____
JESSE M. FURMAN
United States District Judge